Porter **WILLIAMS**, Plaintiff,

v.

James **CONNOLLY**, individually and doing business as Blackhawk Motel, Northern States Power Company, a Minnesota corporation, Skelly Oil Company, a Delaware Corporation, Stewart-Warner Corporation, a Virginia Corporation, and Bastian-Morely Company, an Indiana corporation, Defendants.

No. 3–62–Civ. 275.

United States District Court
D. Minnesota,
Third Division.
March 24, 1964.

# 540

John B. McCarthy, Minneapolis, Minn., for plaintiff.

W. Scott Herzog, Hopkins, Minn., for defendant Bastian-Morely Co.

LARSON, District Judge.

This action arises out of an explosion in a room in the Blackhawk Motel, Newport, Minnesota, on March 16, 1962, in which the plaintiff, a California resident, was allegedly injured. An action was brought against the motel owner James Connolly, the Northern States Power Company, Skelly Oil Company, Stewart-Warner Corporation, and the Bastian-Morely Company.

■ Bastian-Morely was served under the Minnesota "One Act" statute, M.S. 303.13, subd. 1(3),[1] and here moves to quash the service of the summons and complaint. Determination as to whether a Federal Court has jurisdiction over the person of a foreign corporation in a diversity action raises two questions. "First, whether the local statute as construed by the courts of the pertinent state would subject the foreign corporation to local jurisdiction under the circumstances there present; secondly, if the forum attempted to assert jurisdiction would this action comport with the relevant clauses of the federal constitution. * * * While the latter question is to be decided in accordance with federal precedents, evaluation of the scope of the local statute is a matter of state law and on this issue we sit as if we were a state court." Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., 310 F.2d 20, 22–23 (1st Cir. 1962).

In view of the disposition of this motion, it may not be strictly necessary to discuss the first question; however, the briefs and oral argument indicated a great deal of uncertainty as to what law applied on what question, so the issue of whether the Minnesota Court would take jurisdiction over this matter under M. S. 303.13, subd. 1(3) will be dealt with.[2]

1. § 303.13, Subd. 1(3). "If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota." Hereinafter this statute shall be referred to as the One Act statute.

2. It should be noted that the use of State standards to govern amenability to process in diversity cases is not unanimously accepted; in the opinion of some, Federal standards should govern. See the power-

I. M.S. 303.13, subd. 1(3) applies to both torts and contracts; however, jurisdiction under the tort provision requires a tort committed against a "Minnesota resident" and since the instant plaintiff is admittedly a California resident, the parties here have not argued the applicability of the tort portion, concentrating instead on the contract portion. See Bard v. Bemidji Bottle Gas Co., 23 F.R.D. 299, 301, 302 (D.Minn. 1958). The contract question will be decided, then, without a determination of whether the instant plaintiff could maintain an action in tort under the statute.

■ In order for a Minnesota Court to obtain jurisdiction over a foreign corporation, the statute requires that the foreign corporation make a contract with a Minnesota resident to be performed in whole or in part in Minnesota. Under such a circumstance service can be obtained over the foreign corporation "in any actions or proceedings against the foreign corporation arising from or growing out of such contract." It is plaintiff's theory that the complaint states a cause of action based on breaches of warranty and that the warranties extend to the plaintiff. The warranty actions would be viewed as arising from or growing out of the contract. His position is heavily dependent on Judge Nordbye's interpretation of the One Act statute in Ewing v. Lockheed Aircraft Corp., 202 F.Supp. 216 (D.Minn.1962). A Northwest Airlines plane manufactured and assembled by Lockheed and using General Motors engines had crashed and Ewing, a South Dakota resident, sued the three parties for damages arising from the crash, asserting jurisdiction under the contract portion of the statute. Judge Nordbye ruled that jurisdiction under the contract portion of the statute

should not be limited to resident plaintiffs and said:

> "Any warranty as to fitness for commercial travel, express or implied, growing out of that contract would inure to the benefit of those who were expected to be carried on the plane for purposes for which it was intended. In other words, the passengers on the plane would stand in privity with Northwest in so far as these warranties are concerned. * * * The decedent herein was therefore embraced within the ambit of such contract warranties. This proceeding fairly comes within the purview of the statute in so far as it arises from and grows out of the contract between Lockheed and Northwest, a Minnesota resident." (202 F.Supp. at 219).

Assuming a contract between Bastian-Morely and a Minnesota resident, Ewing provides an analysis for application of the statute to the instant facts. Accord Hinton v. Republic Aviation Corp., 180 F.Supp. 31 (S.D.N.Y.1959). The analogy between a defective engine and a passenger in an airplane, on the one hand, and a defective heater and a guest in a motel, on the other, is a persuasive one. Putting aside the privity question for the moment, the movement in warranty law seems to be toward extending the protection of the warranty to those who may reasonably be expected to be endangered if the object sold is defective. Prosser, Torts 501 (2nd ed. 1955). A warranty as a vehicle of social policy impressed by law should be extended with reference to the underlying social policy. "The interest in consumer protection calls for warranties by the maker that *do* run with the goods, to reach all who are likely to be hurt by the use of the unfit commodity for a purpose ordi-

---

ful dissent of the late Judge Charles E. Clark in Arrowsmith v. United Press International, 320 F.2d 219, 234 (2nd Cir. 1963). However, the great weight of recent decisions would apply State law, e. g., Jennings v. McCall Corp., 320 F.2d 64, 68–69 (8th Cir. 1963); Waltham

Precision Instrument Co. v. McDonnell Aircraft Corp., supra; Stanga v. McCormick Shipping Corp., 268 F.2d 544 (5th Cir. 1959); Canvas Fabricators, Inc. v. William E. Hooper and Sons, Co., 199 F. 2d 485 (7th Cir. 1952).

narily to be expected." 2 Harper and James, The Law of Torts § 28.16 (1956). (Emphasis authors'.)

The Ewing approach, then, is sound, and under the analysis indicated above, it is an interpretation of Minnesota law. This Court feels that it is consistent with the law which would be applied by the Minnesota Courts. It reaches this conclusion because of the general approach the Minnesota Supreme Court has taken to the One Act statute and because it appears that the privity requirement is on the wane in this State.

In construing the language of the One Act statute with reference to particular fact situations and in applying Federal constitutional law, the Minnesota Supreme Court has indicated that it will assert its maximum jurisdiction. See Note, 42 Minn.L.Rev. 909, 914, n. 29 (1958). Paulos v. Best Securities, Inc., 260 Minn. 283, 109 N.W.2d 576 (1961) was an action arising out of a Minnesota resident's purchase by mail of securities from a New York corporation. None of the individual defendants nor agents or officers of the corporate defendant were ever in Minnesota; all communications among the parties were by telephone or mail. The transactions consisted of the Minnesota resident-plaintiff mailing checks from St. Paul to New York and the New York corporation-defendant mailing shares of stock to the plaintiff although some shares were retained in New York by the defendants. The Minnesota Court held this within the purview of the statute, saying:

"[The One Act statute] provides that a foreign corporation shall be deemed as 'doing business' here if it enters into a contract with a resident, which contract is to be performed in whole or in part within the state. Obviously, the acts of

Best Securities in promoting and consummating a series of stock sales to plaintiff in Minnesota, through repeated long distance telephone and mail communications, would fall within this definition. Certainly plaintiff's payment for such shares and their ultimate delivery to him were acts, some part of which at least were to be performed in Minnesota." (109 N.W.2d at 582).

See Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N.W.2d 381, 384 (1961). The broad applications of the due process clause of the Federal constitution characteristic of the Minnesota Court, e. g., Ehlers v. United States Heating and Cooling Mfg. Corp., Minn., 124 N.W.2d 824 (1963); Schilling v. Roux Dist. Co., 240 Minn. 71, 59 N.W. 2d 907, 915 (1953), will inevitably be reflected in the approach taken to application of the statute to varied fact situations.

The remaining question in this part of the discussion is whether the Minnesota Courts would consider the instant transaction outside the scope of the One Act statute because the plaintiff is not in privity of contract with the defendant. Minnesota has long discarded the requirement of privity in tort cases but has not yet done so in the contract area. Beck v. Spindler, 256 Minn. 543, 99 N.W. 2d 670 (1959). Of course, the instant plaintiff is not a subvendee and the approach of the Ewing case would be equally applicable here; however, Chief Justice Knutson's important opinion in Beck should indicate to all that privity in warranty cases is no longer looked upon with favor in this State.[3]

II. Once it is decided that the State courts would take jurisdiction over the person of the defendant corporation, it is necessary to consider whether such ju-

3. The use of a warranty theory by the plaintiff in this action as a basis for application of the One Act statute raises an interesting question. As Beck points out, historically a warranty action sounded in tort, and the abolition of the privity requirement would be, in effect, a turn back toward the tort theory. And *if* the warranty action really sounds in tort and *if* a nonresident cannot invoke the tort portion of the statute, should not the One Act statute be interpreted to bar warranty actions by nonresidents?

risdiction would violate the due process clause of the Fourteenth Amendment to the United States Constitution. As it applies to this case the due process clause guarantees that no person shall be deprived of property without the process of law which is due him.

The leading case interpreting the due process clause with reference to State assertions of jurisdiction over foreign corporations is International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). International Shoe held that the demands of the due process clause are met when the corporation has "such contacts * * * with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." (326 U.S. at 317, 66 S.Ct. at 158, 90 L.Ed. 95). The Court went on to say:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [Citations]. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. [Citations].

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of

that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. [Citations]." (326 U.S. at 319, 66 S.Ct. at 159, 90 L.Ed. 95).

In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957) the Court held that California could take jurisdiction over a Texas insurance company which made an insurance contract by mail with a California resident. Saying that the demands of due process are satisfied because the suit was based on a contract which had substantial connection with California, Justice Black argued:

"It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process." (355 U.S. at 223–224, 78 S.Ct. at 201, 2 L.Ed.2d 223).

The opinion shed some light on the background of International Shoe:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and

other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (355 U.S. at 222–223, 78 S.Ct. at 201, 2 L.Ed.2d 223).

This "trend" was commented on by the Court in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):

"But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." (357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d 1283).

In further clarification of International Shoe the Hanson v. Denckla Court pointed out that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d 1283). The test, then, is a very practical one aimed at determining when a foreign corporation has brought itself into contact with a State so that the geographic limitations of the State pose no constitutional barrier to State jurisdiction over the foreign corporation.

The nature of the test makes it an appropriate one for case-by-case application, and while general statements are hazardous they are sometimes necessary. Since my view of the limitations on State jurisdiction imposed by the due process clause differs from others expressed by this Court,[4] I think a brief indication of my position will help to clarify whatever differences exist in our Court and will facilitate their eventual resolution.

Whether or not it is "fair" in a given case for a State to assert jurisdiction over a nonresident defendant depends on whether reasonable notice has been given the defendant of the claim and whether there have been minimal contacts with the State. If the activity or contact with the State is such as to sustain jurisdiction, then the relative inconvenience to the defendant of a particular forum can be considered. This question of convenience is, however, not a constitutional question. E. g., Pendzimas v. Eastern Metal Products Corp., 218 F. Supp. 524, 529 (D.Minn.1961). It is properly dealt with in a motion made under 28 U.S.C. § 1404(a). Sympathetic application of this statute would seem appropriate in this area.[5]

The development of the case law in the United States Supreme Court indicates an expansion of the scope of jurisdiction over nonresidents. This expansion, as

---

4. Compare Pendzimas v. Eastern Metal Products Corp., 218 F.Supp. 524 (D. Minn.1961); Dahlberg Co. v. American Sound Products Inc., 179 F.Supp. 928 (D. Minn.1959); Mueller v. Steelcase, Inc., 172 F.Supp. 416 (D.Minn.1959) with McMenomy v. Wonder Bldg. Corp. of America, 188 F.Supp. 213 (D.Minn.1960).

5. For a discussion of this problem in the form it takes in State courts, see Ehrenzweig, The Transient Rule of Personal Jurisdiction: The "Power" Myth and Forum Conveniens, 65 Yale L.J. 289, 312–14 (1956).

the Court has said, reflects the increased complexity of commercial transactions carried out in our truly national common market and the concommitant ease of defense arising from modern transportation and communications facilities.[6] Hanson v. Denckla is a warning that this expansion has limits, but it should now be clear that the limitations will come into play only after jurisdiction has been properly taken in many cases which would have been barred to courts under the older approaches. It is not unusual to have a number of parties from different jurisdictions involved in a lawsuit in one State. If the territorial limitations on State jurisdiction are applied strictly, it may be impossible to bring all parties together in one action or a multiplicity of litigation might be necessary with the attendant expense. With reference to this problem, Justice Traynor has said:

"It also bears emphasis that if plaintiff were unable to bring an action against Jahn here, it would be similarly frustrated with regard to Jahn's codefendants in New York. Two actions instead of one would then be necessary * * *. A denial of jurisdiction would lead only to a duplicity of litigation. '[T]he quality and nature of the activity in relation to the fair and orderly administration of the laws' fully justifies subjecting Jahn to the jurisdiction of our courts." Henry R. Jahn & Son, Inc. v. Superior Court, 49 Cal.2d 855, 323 P.2d 437 (1958).

Courts have upheld jurisdiction over nonresidents in a variety of situations. Among the factors considered determinative on the minimal contacts issue have been general business activities within the State, Moore-McCormack Lines, Inc. v. Bunge Corp., 307 F.2d 910, 914–915 (4th Cir. 1962); degree of control over the local distributor, Sanders Associates,

Inc. v. Galion Iron Works, 304 F.2d 915, 920 (1st Cir. 1962); operation of delivery trucks in forum State, Shealy v. Challenger Mfg. Co., 304 F.2d 102, 104 (4th Cir. 1962); activity of corporation's representative within forum State, Florio v. Powder Power Tool Corp., 248 F.2d 367 (3rd Cir. 1957); volume of business within the forum State, Chovan v. E. I. DuPont de Nemours Co., 217 F.Supp. 808, 812–813 (E.D.Mich.1963) (citing McGee, Court says that because Michigan is second largest iron ore State it may have "manifest interest" in allowing its citizens to seek redress in its courts for injuries arising from defective blasting caps); authorizing an independent manufacturer's agent to solicit orders and subsequent shipment of goods into State, Wisconsin Metal and Chemical Corp. v. DeZurik Corp., 222 F.Supp. 119 (E.D. Wis. 1963); a contract made and breached in the State, Enco, Inc. v. F. C. Russell Co., 210 Oregon 324, 311 P.2d 737 (1957) (implication that jurisdiction would have been upheld if contract had only been breached in Oregon); an exclusive independent distributor in the State through whom products sold, Eclipse Fuel Engineering Co. v. Superior Court, 148 Cal.App.2d 736, 307 P.2d 739 (1957). Varying degrees of activity by the nonresident defendant within the forum State are reflected in Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N.W.2d 381 (1961); Carl F. W. Borgward G. M. B. H. v. Superior Court, 51 Cal.2d 72, 330 P.2d 789 (1958); Henry R. Jahn & Son, Inc. v. Superior Court, supra; Compania De Astral S. A. v. Boston Metal Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372 (1954); Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951). In S. Howes Co. v. W. P. Milling Co., 277 P.2d 655 (Okla.1954) the defendant manufacturer sold milling machinery to the plaintiff through an independent broker in Oklahoma. The defendant had no oth-

6. The increased complexity of modern transactions will require new approaches to many traditional notions about limits on effective service, procedures for bringing multiple parties together in one law-suit, subject matter jurisdiction and venue, among other things. See Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963 (I), 77 Harv.L.Rev. 601, 629, 638 (1964).

er business connections with Oklahoma; it sent the machinery directly to the plaintiff, instructed the broker in installation procedure and one of its employees investigated the complaints of the plaintiff. In an ensuing breach of warranty action, the Oklahoma Court held it had jurisdiction over the defendant.

Gray v. American Radiator and Standard Sanitary Corporation, 22 Ill.2d 429, 176 N.E.2d 761 (1961) is an important decision of the Illinois Supreme Court interpreting the standards of International Shoe in the context of a nationwide business. An Illinois resident was injured by the explosion of a water heater manufactured by a foreign corporation and in turn sold to a "middle-man" foreign corporation. The manufacturer claimed that it did no business in Illinois. The Illinois Court, in a thoughtful opinion relating its decision to the Supreme Court cases, reversed the lower court and held it had jurisdiction over the nonresident corporation. Pointing out that under McGee the requirements for jurisdiction are met if the act or transaction itself has a substantial connection with the State of the forum, the court said:

> "In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of. Titan's business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture

of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

"With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product to say that the use of such products in the ordinary course of commerce is sufficient contact with this state to justify a requirement that he defend here." (22 Ill.2d at 441–442, 176 N.E.2d at 766).

Given the facts hypothesized, this Court is in agreement with the Gray analysis. A corporation placing its products in the stream of national commerce is in a very real sense availing itself of the privilege of conducting activities within each State its products may ultimately enter. In addition to whatever direct reliance on the laws of a State might be necessary in any particular case, benefits from a national commerce depend upon an ordered legal system in each State making up the nation, and one who participates in this commerce takes advantage of the ordered system of laws prevailing in all fifty States. Under such circumstances the State, which as a practical matter must open its borders to this commerce, has an important interest in providing a forum for its injured residents. See, e. g., McGee v. International Life Ins. Co., supra; Chavon v. E. I. DuPont de Nemours Co., supra.[7]

A limitation on this position flows from the language of International Shoe itself.

7. The general position taken here is supported by the analysis in Reese and Gal-

ston, Doing An Act or Causing Consequences as Bases of Judicial Jurisdiction,

Mr. Chief Justice Stone differentiated the situation where a foreign corporation's activities within a State were of such a substantial nature as to support jurisdiction over the corporation on causes of action unrelated to those activities from the situation where there is much less activity and where, therefore, jurisdiction can be asserted over the corporation only as to causes of action arising out of such activity. (326 U.S. at 318, 66 S.Ct. at 159, 90 L.Ed. 95). Jurisdiction under the Gray analysis would be limited to the latter situation. See W. H. Elliott & Sons Co. v. Nuodex Products Co., 243 F.2d 116, 122–123 (1st Cir. 1959) (concurring opinion by Magruder, C. J.).

A case representing a more restrictive view of State jurisdiction is Erlanger Mills Inc. v. Cohoes Fibre Mills, 239 F.2d 502 (4th Cir. 1956) in which the plaintiff sought out the New York defendant and contracted in New York for the purchase of yarn to be used in the plaintiff's North Carolina plant. The goods were sold f. o. b. New York and shipped to North Carolina. A dispute arose and an officer of the defendant went to North Carolina and discussed the complaint, and a lawsuit for breach of contract was started. The Court held that it would be unconstitutional to subject the defendant to North Carolina's jurisdiction.

If the goods had been delivered by the defendant in North Carolina, presumably jurisdiction would have been allowed. See Reese and Galston, supra, note 7, at p. 262 n. 53. Denying it when the goods were shipped into the State thus placed a heavy and, it is suggested, artificial emphasis on the significance of the State boundaries. The North Carolina statute, N.C.Gen.Stat. § 55–145(a) (3) (1960), was easily broad enough to include the Erlanger transaction, and it is difficult to see how due process would be violated by requiring the defendant corporation, which shipped its products directly to the plaintiff, to defend a lawsuit concerning those products in the State where they were sent. On similar facts other courts have reached a result opposite to Erlanger, see, e. g., S. Howes Co. v. W. P. Milling Co., 277 P.2d 655 (Okl.1954), and

44 Iowa L.Rev. 249 (1959). After pointing out that "causing consequences in a state by means of an act done elsewhere may afford the state a basis of judicial jurisdiction over the actor," (p. 260) the authors go on to say that "the problem is more difficult when the act was not done for the purpose of causing consequences in the state *but could reasonably have been anticipated to do so.* It is thought that judicial jurisdiction will here exist if the consequences which could have been anticipated and which actually occurred were of a sort dangerous to persons or to things. * * * In other situations, the existence of judicial jurisdiction will be uncertain." (Pp. 262–63). (Emphasis added). Such a classification encompasses a myriad of products, given the foreseeable possible danger in most things. This analysis has respectable antecedents. The basis for upholding the constitutionality of nonresident motorist statutes is the dangerous nature of motor vehicles, Hess v. Pawloski, 274 U.S. 352, 356, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); Olberding v. Illinois Central R.R. Co., 346 U.S. 338, 341, 74 S.Ct. 83, 98 L.Ed. 39 (1953). Yet one automobile is probably no more dangerous to the citizenry of a State than, say,

a defective boiler. That there are many more automobiles than boilers is no reason for denying a person injured by a boiler his remedy in the State of the injury. The State's interest in protecting the individual citizen is the same in each case. Cases such as Hess and McGee v. International Life Ins. Co., supra, cannot be explained away as exercises of a State's police power for this is to say no more than that the State's power could be extended beyond its borders in those situations, and the relevant question is what was the rationale for such extensions and is it applicable to other kinds of cases. As Chief Judge Tehan has recently said, "We reject the defendant's contention that the special interest a state has in providing redress for its residents when an insurer refuses to pay its claim is the decisive factor in the McGee case. It is true that California by its legislation manifested a special interest in enforcing insurance contracts, but the foundation of jurisdiction includes the interest a state has in providing redress in its own courts against those who incur contractual obligations with its citizens." (Wisconsin Metal & Chemical Corp. v. De-Zurik Corp., supra, 222 F.Supp. at p. 123).

so, for that matter, have legislatures. See the new Wisconsin One Act statute, Wis.Stat. § 262.05(5) (e) (Supp.1963), granting Wisconsin courts jurisdiction in an action which "relates to goods * * * or other things of value actually received by the plaintiff in this state from the defendant *without regard to where delivery to carrier occurred.*" (Emphasis added). The Erlanger court has been characterized as "unwilling to depart from the conventional tests of doing business," [8] and the opinion has been criticized by several commentators.[9] The territorial limitations on State jurisdiction are an obvious fact of our Federal system and their continued viability in this connection was emphasized by the Supreme Court in Hanson v. Denckla, but the States have been allowed to reach beyond their borders and assert jurisdiction in various situations; the question now is under what circumstances should this be sanctioned. To this question, Erlanger says only: not here. (239 F.2d at 507). It is respectfully suggested that such a conclusion is not supported by references to "the danger of grave burdens and impediments to interstate commerce, if the door should be opened to similar legislation by other States." (239 F.2d at 507). The commerce clause question is a separate one which has not been adequately explored,[9a] but other States do have One Act statutes and no one has yet shown that interstate commerce has been adversely affected by their existence. Assuming contacts sufficient to meet the constitutional standards, it would seem within the province of the legislature to decide to what extent it wishes to assert the extraterritorial jurisdiction of the State.

■ I am fully aware of the caveat of Hanson v. Denckla; case-by-case development will give meaning to the limits on State extraterritorial jurisdiction indicated in that opinion, and this development will necessitate providing the Court with enough information about the defendant and its contact with the forum asserting jurisdiction to allow a reasoned decision. In the instant case the only information before this Court is what can be gleaned from the complaint and from an affidavit supplied by defendant stating essentially that it has no office in Minnesota. This Court has no way of knowing, among other things, whether the heater in question was manufactured with the expectation that it would be sold in national commerce, whether it was installed by the manufacturer personally or according to its directions, whether the manufacturer solicits business in Minnesota or with whom in Minnesota a contract was made (the discussion in Part I above *assumed* a contract between Bastian-Morely and the plaintiff, but there is no evidence of such a contract and a contract between the defendant and a Minnesota resident would seem to be necessary

---

8. Wisconsin Metal & Chemical Corp. v. DeZurik Corp., 222 F.Supp. 119, 123 (D. Wis.1963) (Tehan C.J.). Professor Kurland, speaking of the doing business cases and their "presence" and "consent" satellites has said, "The real difficulty underlying these attempts to work out a rationale for personal jurisdiction lay in the fact that the doctrines were borrowed from laws relating to wholly independent sovereignties which were not relevant to jurisdictions joined in a federation." Kurland, The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts, 25 U.Chi.L. Rev. 569, 585 (1958). He then points out that Judge Sobeloff, the Erlanger opinion author, "would continue the pre-federal notions." Ibid., at n. 88.

9. Reese and Galston, supra, note 5 at p. 262; Cardozo, The Reach of the Legislature and the Grasp of Jurisdiction, 43 Corn.L.Q. 210 (1957). Judge Sobeloff has elaborated his views in Sobeloff, Jurisdiction of State Courts over Nonresidents in our Federal System, 43 Corn.L.Q. 196 (1957).

9a. Expanding concepts of State jurisdiction could result in situations where a particular exercise of State jurisdiction, not violative of due process, would be a burden on interstate commerce. The *Erlanger* fact situation would not appear to present such a problem, but the Commerce Clause as a limitation on jurisdiction could become increasingly important. See Note, 73 Harv.L.Rev. 909, 983–987 (1960).

to bring the action within the contract provisions of the Minnesota One Act Statute).[10] In short, we have not been presented with evidence from which we can make an analysis of the contacts between defendant Bastian-Morely and the State of Minnesota or of the applicability of the contract provisions of the Minnesota statute, and thus the defendant's motion will be granted.

The plaintiff here attempts to avoid this result by arguing that since the defendant is in the best position to produce evidence of minimal contacts, the burden of coming forward with the evidence on this point should be on the defendant. He apparently envisions a situation where once a complaint asserting jurisdiction under the One Act statute is filed, the defendant must prove that it does not have minimal contacts with the State before such jurisdiction can be defeated. In support of this proposition plaintiff cites the recent case of Ehlers v. United States Heating and Cooling Mfg. Co., Minn., 124 N.W.2d 824 (1963).

Ehlers involved a fire allegedly resulting from the explosion of a boiler. Four allied foreign corporations were involved in the manufacture of the boiler and they were brought into the case as third party defendants. The Ehlers case considered the efforts of one of these corporations to quash the service of process made on it under the Minnesota One Act statute. This corporation's contact with Minnesota was purely that resulting from the manufacture of the boiler. It solicited no business in Minnesota, and "no employee, agent, officer, or representative of National Heating had anything to do with the boiler after it was sold [to a Chicago dealer who sold it to a Minnesota contractor]." (124 N.W.2d at 825).

After pointing out that under its decisions the negligent manufacture of a product becomes a tort committed in whole or in part in Minnesota upon the occasion of an injury in Minnesota (so that the terms of the One Act statute are met), the Minnesota Court went on to say:

"There is no decision of the United States Supreme Court directly in point. In the absence of specific controlling authority with respect to Federal constitutional limitations on the power of the state to provide for service upon foreign corporations in the manner specified by § 303.13, subd. 1(3), it remains our opinion that service upon a foreign corporation in the manner prescribed is effectual to confer jurisdiction in cases such as this. We feel justified, in view of the record, in concluding that the product here involved was manufactured by appellant corporation for use by the general public. It is not contended that the area of foreseeable use of the product was so limited as to exclude the State of Minnesota. The affidavit filed in support of the motions to dismiss did not negate the reasonable inference that the 'Fireball' boiler is a mass-production unit intended for nationwide use. The fact that such a product sold to a Chicago distributor would, in the regular course of distribution, be purchased and used by a Minnesota buyer would seem reasonably to have been anticipated by the manufacturer. Appellant, National Heating, does not claim by affidavit or otherwise that the 'Fireball' here involved acquired Minnesota situs in any way other than in

---

10. Most of the "One Act" cases in Minnesota as well as throughout the country have involved torts rather than contracts. See Comment, U.Chi.L.Rev. 674, 678 (1955). Under the Minnesota One Act statute, at least, jurisdiction under the contract provisions requires a contractual relationship between the defendant corporation and a Minnesota resident, and while the Minnesota Supreme Court has

not yet developed its interpretation of these provisions, it seems clear that a plaintiff asserting jurisdiction under the One Act statute in a contract action must show the contractual relationship necessary to jurisdiction of the Minnesota courts. This may put a nonresident plaintiff in a very difficult position. See note 3 supra.

the usual and customary marketing process vital to the conduct of a profitable enterprise. We conclude, therefore, that the situation is one controlled by our prior decisions. Whether a different result would follow in this case were the manufacturer to have established that the use of his product in Minnesota was not foreseeable need not be and is not determined." (124 N.W.2d at 827).

The decision stands for the proposition that a corporation which places a mass-production item, intended for nationwide use, into the stream of commerce can be sued in any State in which its product causes an injury. Though the area covered by the Ehlers opinion is a very difficult one, the Minnesota Court has not seen fit to lay bare the considerations which impelled it to its conclusion. It apparently has adopted the reasoning of the Illinois Court in Gray v. American Radiator and Standard Sanitary Corp., supra, including the inference of mass production made there. The courts in both Ehlers and Gray had more information before them than is before this Court on the instant motion.

Contrary to the argument of plaintiff, Ehlers effected no shift of the burden of proof as to minimal contacts, while under the Ehlers view and the approach of this Court, the burden of a plaintiff in establishing such contacts will often be quite light, it is still the plaintiff's task to prove jurisdiction if it is challenged by the defendant. Cf., Russell v. New Amsterdam Casualty Co., 325 F.2d 996 (8th Cir. 1964).

As to plaintiff's argument that the burden of coming forward with the evidence as to minimal contacts should be on the defendant because of relative ease of obtaining the relevant information, it should be pointed out that all discovery procedures are available to the parties on a motion such as this. See 4 Moore Federal Practice § 26.09 [2.–4.] [6.] (2nd ed. 1963).

Motion granted.