UNITED BARGE CO., Inc., Dairyland Power Cooperative and The Continental Insurance Company, Libelants,

v.

LOGAN CHARTER SERVICE, INC., in personam, and The Tug City of Joliet, her engines, tackle, furniture, etc., in rem, and the United States of America, Respondents.

UNITED STATES of America, Cross-Libelant,

v.

UNITED BARGE CO., Inc., and Dairyland Power Cooperative, Cross-Respondents.

UNITED STATES of America, Cross-Libelant,

v.

The M/V CITY OF JOLIET, her engines, tackle, apparel and furniture, etc., in rem, and Logan Charter Service, Inc., in personam, Cross-Respondents.

CARGILL, INC. and The Continental Insurance Company, Libelants,

v.

LOGAN CHARTER SERVICE, INC., in personam and the Tug City of Joliet, her engines, tackle, furniture, etc., in rem, and the United States of America, Respondents.

No. 3–64–Civ. 97, No. 3–64–Civ. 98.

United States District Court
D. Minnesota,
Third Division.

Aug. 21, 1964.

626

Nathan A. Cobb and Richards, Montgomery, Cobb & Bassford, Minneapolis, Minn., and T. C. W. Ellis and Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for United Barge Co., Inc., Dairyland Power and Continental Insurance Co.

Curtis L. Roy and Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., and George B. Matthews and Lemle & Kelleher, New Orleans, La., for Logan Charter Service, Inc.

Alan Raywid, Admiralty and Shipping Section, Dept. of Justice, Washington, D. C., Miles W. Lord, U. S. Atty., and Hartley Nordin, Asst. U. S. Atty., Minneapolis, Minn., for the United States.

LARSON, District Judge.

These actions are brought to recover damages for losses suffered when a barge loaded with grain struck a dam on the Mississippi river and sank. At the time of the accident the barge was being towed by a tug belonging to respondent Logan Charter Service, Inc. (Logan). Logan is a Mississippi corporation and has no offices or permanent employees in Minnesota. However, its tugs have come up to St. Paul several times each year in recent years to perform various towing contracts.

Logan was served under the Minnesota "One Act" statute, Minn.Stat. § 303.13, subd. 1(3).[1] It has moved to quash the service on three grounds. It argues that (a) the State statute may not be used to give an admiralty court jurisdiction, (b) there is no action involving a Minnesota "resident" as the statute requires, and (c) the application of the statute to it would be an unconstitutional burden on interstate commerce.

The first issue is whether the Minnesota One Act statute can be applied by this Court in the course of exercising the admiralty jurisdiction granted to it by the Constitution. There is abundant authority that Courts of Admiralty may give effect to State laws in appropriate cases. In Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1940) one of the issues was whether a Florida statute providing for the survival of wrongful death actions would be applied in an admiralty case arising within Florida. In the course of its opinion, the Supreme Court reviewed and commented

1. Minn.Stat. § 303.13, Subd. 1(3) (1961):
"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota."

on the case of The City of Norwalk, 55 F. 98 (S.D.N.Y.1893) as follows:

"The grounds of objection to the admiralty jurisdiction in enforcing liability for wrongful death were similar to those urged here; that is, that the Constitution presupposes a body of maritime law, that this law, as a matter of interstate and international concern, requires harmony in its administration and cannot be subject to defeat or impairment by the diverse legislation of the States, and hence that Congress alone can make any needed changes in the general rules of the maritime law. But these contentions proved unavailing and the principle was maintained that a State, in the exercise of its police power, may establish rules applicable on land and water within its limits, even though these rules incidentally affect maritime affairs, provided that the state action 'does not contravene any acts of Congress, nor work any prejudice to the characteristic features of the maritime law, nor interfere with its proper harmony and uniformity in its international and interstate relations'. It was decided that the state legislation encountered none of these objections. The many instances in which state action had created new rights, recognized and enforced in admiralty, were set forth in The City of Norwalk, and reference was

also made to the numerous local regulations under state authority concerning the navigation of rivers and harbors. There was the further pertinent observation that the maritime law was not a complete and perfect system and that in all maritime countries there is a considerable body of municipal law that underlies the maritime law as the basis of its administration. These views find abundant support in the history of the maritime law and in the decisions of this Court.

\* \* \* \* \* \*

"This criterion is manifestly not limited to cases of wrongful death. It is a broad recognition of the authority of the States to create rights and liabilities with respect to conduct within their borders, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction." [2] (Footnotes omitted.)

In the instant case Minnesota has adopted a policy of providing a forum for its residents who suffer harm within the State from the actions of non-residents. This does not affect any of the "characteristic features" of admiralty law nor does it encroach upon an area where uniformity of practice seems important.

Thus the statute can be appropriately applied if it does not contravene Admiralty Rules 1 and 2.[3] Logan urges

2. 312 U.S. 389–391, 61 S.Ct. 692–693. These principles were recently reinstated and applied in Kossick v. United Fruit Co., 365 U.S. 731, 738–742, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). An extensive list of the State litigation which has been given effect in admiralty cases is given in Benedict on Admiralty § 35 (6th ed. 1940).

3. Admiralty Rule 1 provides in part:
"All process shall be served by the marshal or by his deputy, or, where he or they are interested, by some discreet and disinterested person appointed by the court."
Admiralty Rule 2 provides that:
"In suits in personam the mesne process shall be by a simple monition in

the nature of a summons to appear and answer to the suit \* \* \* with a clause therein to attach [the respondent's] goods \* \* \* if said respondent shall not be found within the district."
62 Stat. 961 (1948), 28 U.S.C. § 2073 (1958) says that:
"The Supreme Court shall have the power to prescribe, by general rules, the forms of process \* \* \* and the practice and procedure in admiralty and maritime cases in the district courts \* \* \*.
"All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."
From the terms of 28 U.S.C. § 2073 it is

that Rule 1 requires that the marshal deliver the monition personally to Logan or an agent actually authorized to accept service. But no satisfactory reason is suggested why such a narrow reading should be adopted. Certainly the language of the rule does not compel such a conclusion. Although Rule 1 was formulated at a time when substituted service under State law would have been held invalid,[4] this merely suggests that its framers did not have our current situation in mind, not that they would have desired to have the rule construed so as to deny effect to a substituted service statute of the forum State. The better policy would appear to be that Rule 1 is complied with when the marshal serves the monition on anyone who could valid-

ly receive it under State law.[5] The basic protection to Logan against abuse of this procedure is in the requirements of notice and minimal contacts imposed by due process standards.[6]

The second point made by respondent Logan is that since libelants are all foreign corporations, they are not Minnesota "residents" as the One Act statute requires.

 While this is a question of State law, there are no reported Minnesota decisions which deal with it. The only guide which this Court really has is the principle that the Court should construe the term "resident" so as to allow the statute to fulfill the purposes for which it was designed.[7] In considering this

clear that if the One Act Statute is thought to conflict with Rules 1 and 2, then the One Act Statute may not be applied in admiralty cases.

4. The Admiralty Rules were promulgated on December 6, 1920. The first ruling of the Supreme Court authorizing substituted service in appropriate cases was Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

5. Several cases have so held. Valkenburg, K. G. v. The S.S. Henry Denny, 295 F. 2d 330, 333 (7th Cir. 1961); Paige v. Shinnihon Kishen, 206 F.Supp. 871 (E. D.La.1962).
Cf. Sioux City & New Orleans Barge Lines, Inc. v. Upper Mississippi Towing Corp., 221 F.Supp. 737 (S.D.Tex.1963) (assumes the point in the course of discussion) and Riinc, Inc. v. Peddie, 195 F.Supp. 124 (E.D.Ill.1961) (permitting service to be made by a marshal outside the State when State law would make such service valid.)
Also see: In re Louisville Underwriters, 134 U.S. 488, 493, 10 S.Ct. 587, 589, 33 L.Ed. 991 (1890) where the Court said: "In the present case, the libelee had, in compliance with the law of Louisiana, appointed an agent at New Orleans, on whom legal process might be served, and the monition was there served upon him. This would have been a good service in an action at law in any court of the state or of the United States in Louisiana. And no reason has been, or can be, suggested why it should not be held equally good in admiralty. [Citations omitted.]"
Although not directly in point, the case

does indicate that State law is an appropriate test by which to judge whether the party receiving the monition was a proper one to be substituted for the person of the defendant.

6. My views on the due process aspects of this statute were recently given at some length in Williams v. Connolly, 227 F. Supp. 539, 542–548 (D.Minn.1964). No contention is made here that Logan did not have sufficient contacts with the State to satisfy due process standards.

7. Fletcher, Private Corporations § 8300 at 30 (perm. ed. rev. repl. 1960).
The libelants do offer two other suggestions. Noting that all of them are licensed to do business in the State, they suggest that the situation is determined by Minn.Stat. § 303.09 (1961) which provides that:
"After the issuance of a certificate of authority by the secretary of state and until cancelation or revocation thereof or issuance of a certificate of withdrawal, the corporation shall possess within this state the same rights and privileges that a domestic corporation would possess if organized for the purposes set forth in the articles of incorporation of such foreign corporation pursuant to which its certificate of authority is issued, and shall be subject to the laws of this state."
To try to apply the statute here would be begging the question since the issue is whether the Legislature has specifically provided that foreign corporations should be treated differently in Minn.Stat. § 303.13, subd. 1(3) (1961). Nevertheless, the statute can be viewed as an ex-

question, the following facts taken from affidavits submitted to the Court seem relevant.

Dairyland Power Company is organized under the laws of Wisconsin, but it has also elected to be treated as a Minnesota cooperative association for many purposes under a special statutory provision which allows such an election.[8]

United Barge Co. is a Delaware corporation licensed to do business in Minnesota. It has an office in Minneapolis and all of its officers and directors are citizens of Minnesota.

Cargill, Inc., is a Delaware corporation licensed to do business in Minnesota and has its principal place of business here. It has offices and facilities throughout the State.

Continental Insurance Company is licensed to do business in Minnesota and has permanent offices and employees here.

■ Dairyland Power has the best case for being treated as a "resident" of Minnesota under the traditional doctrines which look to the State of incorporation as the corporate residence or domicile.[9] It has elected to conform to the Minnesota statutes on cooperative associations and has received such benefits as their provisions grant. It might well be treated as domiciled in Minnesota for all relevant purposes, but the Court feels that the Minnesota Supreme Court would at least consider it "resident" for

purposes of the One Act Statute.[10] This may be all that is strictly necessary to the decision on this point because the other libelants in No. 3–64–Civil 97 could be treated as intervenors, but since the other issues are properly presented and are likely to recur, it seems better to express my views on them.

The Court believes that Cargill, United Barge and Continental Insurance Company are all residents of Minnesota within the meaning of the One Act Statute. There are two considerations which have led me to this conclusion. The first is that the Minnesota Supreme Court has been giving the statute a very broad reading and appears prepared to take jurisdiction over any case in which Minnesota has a reasonable interest in providing a remedy for plaintiffs.[11]

■ Equally important is the fact that when the Legislature enacted the One Act statute it was moving into an area of the law which was considered very unsettled. The extent to which a State can subject nonresidents to personal jurisdiction is a subject which has been extensively discussed and litigated in the past few years.[12] In the light of this background, the Court feels that the restriction of the right to sue to residents of the State can best be understood as an attempt to insure that the jurisdiction the State was attempting to exert would be valid within the due process clause. The Legislature was extending

pression of general policy which we might expect the Legislature to be rather explicit about abandoning.

The second suggestion is that since the statute applies to Minnesota corporations, it must apply to licensed foreign corporations as well or it will fall under the equal protection clause. This is a very doubtful point. The Second Circuit has recently indicated that if such a distinction were made, it might well be valid. See: Footnote 19 in Arrowsmith v. United Press Int'l, 320 F.2d 219, 232–233 (1963) (Friendly, J., for the court en banc.)

8. Minn.Stat. § 308.14 (1961).

9. Fletcher, Private Corporations, supra n. 7, at 28.

10. Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N.W.2d 381 (1961) (domestic corporation assumed to be a "resident" within the One Act Statute), cert. den. 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961).

11. Compare Ehlers v. U. S. Heating & Cooling Mfg. Co., 267 Minn. 56, 124 N.W. 2d 824 (1963) with Fourth Northwestern Nat'l Bank v. Hilson Industries, Inc., 264 Minn. 110, 117 N.W.2d 732 (1962) (Holding that to take jurisdiction would violate the due process requirement. The court applied forum non conveniens principles to reach its result.)

12. Williams v. Connolly, supra n. 6.

its protection only to those parties for whom the State had a considerable interest in providing a forum because of their continuous and established contacts with Minnesota. Thus viewed, the crucial test as to whether a foreign corporation should be classed as a resident for the purposes of the One Act Statute would appear to be a consideration of the extent of its contacts with the State.

■ With these factors in mind, any corporation which had its principal place of business in Minnesota would certainly appear to be qualified to use the statute. By this test Cargill is a resident of Minnesota for purposes of the One Act Statute.

■ The size and scope of the business of United Barge does not appear from the materials at hand, but the fact that it has a permanent office here and that all of its officers and directors are residents of this State indicates that it has sufficiently extensive contacts here to be considered a resident.

■ The status of Continental Insurance Company is not important since its cause of action is only derivative. But it seems appropriate to note that any company which is licensed to do business in Minnesota and has permanent offices and agents located here would seem to have adequate contacts with the State to allow it to be treated as a resident under the One Act Statute. The interest of both the State and the company in having the lawsuit tried here, where the cause of action arose, would be very substantial.

■ As a final argument, Logan claims that, since its business is almost entirely interstate, to require it to bring its officers and witnesses into Minnesota for this trial would place an unreasonable burden on interstate commerce. This Court has recently noted the possibility that the interstate commerce clause may set limits on the State extension of personal jurisdiction even where the due process clause would not,[13] but the situation here presents no such problem. The same objection was rejected on rather similar facts in International Milling Co. v. Columbia Transp. Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396 (1934) (Cardozo, J.). The Supreme Court suggested two tests for determining whether the burden on commerce was reasonable. First it looked to see whether the plaintiff was a resident of the forum State.[14] Second, it looked to see whether jurisdiction had been taken over the defendant's property while it was within the State in the normal course of business. Although the proceeding involved there was in rem rather than in personam, that would not seem to be a crucial distinction insofar as the burden placed on interstate commerce is concerned as long as the cause of action is sufficiently associated with the forum State to give that State a substantial interest in it.

■ The facts of this case appear to bring it well within the bounds of International Milling v. Columbia Transp. Co., supra. Not only was Logan entering the State regularly on its towing business, but the cause of action arose within this State, which would appear to give Minnesota an even stronger case for taking jurisdiction than it had there.[15]

■ One other point should be briefly considered. Logan claims that,

13. Williams v. Connolly, supra, n. 6, 227 F. Supp., at 548 n. 9a.

14. The plaintiff-appellant was a Delaware corporation with its principal place of business in Minnesota. The Court held that the relevant "residence" to be considered was that of its place of business.

15. With the recent expansion of the power of the States to exercise personal jurisdiction under the due process clause, we would expect a concurrent easing of the restrictions under interstate commerce tests. Cf. Ewing v. Lockheed Aircraft Corp., 202 F.Supp. 216, 217 (D. Minn.1962) (Nordbye, J.), which presented a far stronger factual situation for the application of the "burden on commerce" argument and that was one of the grounds urged for dismissal, but the Court did not even see fit to discuss it.

the statute violates due process requirements to the extent that it grants jurisdiction only if a "tort" is committed. Therefore, the argument runs, if a court takes jurisdiction under the statute it has already decided that the defendant is liable to the plaintiff. The answer to that for this case is that there is also a contract which allows the use of the statute to be sustained without raising a similar problem.[16]

However, the solution to the dilemma which Logan suggests is also plain. The acts which are relied on to give the Court jurisdiction need only have raised a non-trivial possibility that the defendant will be found to have committed a tort. Otherwise the statute would face serious objections under the due process clause.[17]

On the basis of the conclusions set out above, Logan's motion to quash the service of process on it will be denied.

In the event that the Court should reach this result, Logan has requested the right to appeal the decision immediately under the provisions of 28 U.S.C. § 1292(b).

There is a very strong policy against piecemeal appeals. Separate appeals can only be justified if the anticipated trial will be unusually lengthy and difficult or where there is substantial doubt or division of authority on points of law which might dispose of the case at a very early stage.[18] The trial here should be rather straightforward; nor is there any conflict in the decided cases which seems to render the conclusion herein especially doubtful. Logan has indicated that some of the admiralty issues considered by this Court are now before the Fifth Circuit. The conclusions of that Court may, of course, differ from mine. In the event of a final adverse decision, Logan may argue this point again on appeal.

---

16. From the affidavits submitted it appears that Logan had taken the barge in question in tow under an oral contract with Cargo Carriers, Inc., a Delaware corporation with its principal place of business in Minnesota. As indicated in the opinion, Cargo Carriers would thus be treated as a Minnesota resident. This Court has decided that the fact that there is no privity of contract between Logan and the libelants is not a problem under the One Act Statute. Williams v. Connolly, 227 F.Supp. 539, 542 (D.Minn.

1964); Ewing v. Lockheed Aircraft Corp. 202 F.Supp. 216, 219 (D.Minn.1962).

17. The problem is fully discussed in connection with a similar Illinois statute in Nelson v. Miller, 11 Ill.2d 378, 391–394, 143 N.E.2d 673, 680–682 (1957).

18. Gottesman v. General Motors Corp., 268 F.2d 194 (2d Cir. 1959); In re Heddendorf, 263 F.2d 887 (1st Cir. 1959); Milbert v. Bison Labs, Inc., 260 F.2d 431 (3rd Cir. 1958) (en banc).