**HALDEMAN-HOMME MANUFACTURING CO., a Minnesota corporation, Plaintiff,**

v.

**TEXACON INDUSTRIES, INC., a Texas corporation, Defendant.**

**No. 4–64–Civ. 265.**

United States District Court
D. Minnesota,
Fourth Division.
Oct. 30, 1964.

Thomas E. Rohright, R. J. Leonard and Doherty, Rumble & Butler, St. Paul, Minn., for plaintiff.

Paul J. McGough, Wright W. Brooks and Faegre & Benson, Minneapolis, Minn., for defendant.

LARSON, District Judge.

The case is before the Court on a motion by defendant to quash the service of process and dismiss the action.

The basic facts can be stated briefly. Plaintiff Haldeman-Homme Manufacturing Company (Haldeman) is a Minnesota corporation with its principal place of business in Minneapolis. Defendant Texacon Industries, Inc. (Texacon) is a Texas corporation with its main offices in Houston.

In June, 1963, Texacon placed an advertisement in the Wall Street Journal offering to sell the folding-door division of its business. Haldeman replied and the parties entered into negotiations which finally resulted in Haldeman's purchase of the division in mid-September of the same year.

All the inventory, materials and machinery associated with the folding-door operation were then moved by Haldeman to its place of business in Minneapolis. During the course of the negotiations no agent of Texacon ever visited Minnesota. Nor were any of Texacon's duties under the contract to be performed in Minnesota.

Haldeman has brought this present suit against Texacon alleging false representations and breach of contract. Service of process was attempted under the Minnesota "One Act" Statute, Minn.Stat. § 303.13 subd. 1(3).[1] The only questions now before the Court are whether the

---

1. Minn.Stat. § 303.13 subd. 1(3) (1961) provides:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota." Hereinafter this statute shall be referred to as the One Act statute.

One Act Statute can be invoked under the facts of this case and, if so, whether its application here would be a denial of due process to Texacon.

The Court believes that the terms of the One Act Statute allow it to be used in this case.

The contract of sale between Texacon and Haldeman is a short two page document. It provides for a basic purchase price of $18,000. The whole first half of the second page sets out a schedule calling for payments of up to $8,000 if the gross sales of the business purchased by Haldeman exceed specified limits within the next two years.

The next paragraph states:

"11. Haldeman agrees to furnish Texacon audits of its business prepared by Certified Public Accountants for the year ending September 30, 1964 and September 30, 1965. The amount of sales as reflected by such report shall determine the amount to be payable by Haldeman to Texacon."

Since Haldeman's business is located in Minneapolis, it is obvious that the parties contemplated that this portion of the contract would be performed by Haldeman in Minnesota. The provision is important because the sales reflected in the audits might cause the purchase price of the business to be increased by more than forty per cent.

█ The only requirement of the One Act Statute is that some portion of the contract is to be performed in Minnesota by either of the parties. The Minnesota Supreme Court has given that requirement a broad interpretation and this Court has no doubt that the statute is satisfied in this case.[2]

█ The remaining question is whether the application of the statute operates as a denial of due process to Texacon. My recent opinion in Williams v. Connolly, 227 F.Supp. 539, 542–548 (D.Minn.1964) gives my views at some length on the due process limitations on the exercise of personal jurisdiction over non-residents. The analysis there largely controls this decision. All that seems necessary are a few comments on the special features of this case.

Texacon relies on the statement in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) that for a State to assert personal jurisdiction over a non-resident defendant, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Texacon points to the fact that none of its agents has ever entered Minnesota and argues that there has thus never been any "act" by which it invoked the protection of the laws of Minnesota.

Actually, this case is unusual in that it has a specific act that could be relied upon. In Houston on September 26, 1963, Haldeman's president signed a note for the purchase price of the folding-door division. One of the provisions of the note was that it should bear increased interest after maturity at the rate of 10% per annum.

Upon reviewing the documents a few days later in Minnesota, an attorney for Haldeman pointed out that the interest provision made the note usurious under Minnesota law.[3] A new note that would be enforceable under Minnesota law was

2. See: Paulos v. Best Securities, Inc., 260 Minn. 283, 109 N.W.2d 576 (1961). (The plaintiff had contracted to buy stock from a New York corporation dealing in securities. All communications were by mail or long distance telephone. The plaintiff had paid for the shares by mailing his check to New York. The Court indicated that the execution and mailing of the check would be part performance of the contract in Minnesota as required by the One Act Statute.)

3. Minn.Stat. § 334.01 (1961) provides in part:
"Contracts shall bear the same rate of interest after they become due as before, and any provision * * * providing for an increase of the rate of interest after maturity * * * shall work a forfeiture of the entire interest. * * *"

executed in Minnesota on October 1, 1963, and sent to Texacon. The original note was voided and returned to Haldeman.

With the new note Haldeman also sent a chattel mortgage covering the property which Haldeman had purchased and brought to Minnesota.

Obviously, both the note and the chattel mortgage would normally be enforceable only in Minnesota, since Haldeman and the assets of the folding-door business are both located here.

Thus, the acceptance of the note which was designed to be valid under Minnesota law and of the chattel mortgage covering goods permanently located in Minnesota are both acts by which Texacon sought the protection of Minnesota law in this transaction. But the decision here does not rest on such a narrow foundation.

By selling a going business to a Minnesota resident with the knowledge that all its assets and operations would be moved to Minnesota, this Court feels that Texacon has established sufficient contacts with Minnesota to be subjected to the reach of its Courts under the standards of the due process clause. In discussing the nationwide selling of products, my opinion in Williams v. Connolly, supra, noted that:

"A corporation placing its products in the stream of national commerce is in a very real sense availing itself of the privilege of conducting activities within each State its products may ultimately enter. In addition to whatever direct reliance on the laws of a State might be necessary in any particular case, benefits from a national commerce depend upon an ordered legal system in each State making up the nation, and one who participates in this commerce takes advantage of the ordered system of laws prevailing in all fifty States. Under such circumstances the State, which as a practical matter must open its borders to this commerce, has an important interest in providing a forum for its injured residents." [4]

If merely putting products into the stream of commerce will afford an ample basis for a State to take jurisdiction over a foreign corporation in cases arising from the sale of those products, jurisdiction also seems permissible here.

Texacon has sold a going business with the knowledge that it would be moved to Minnesota with all the attendant effects on that State's economy and citizens. In addition, the contract, notes and mortgage would normally have to be enforced in Minnesota. Thus Texacon has contemplated and caused substantial effects within Minnesota which appear to satisfy the due process requirement of "minimal contacts." [5]

The motion by Texacon to quash the service of process upon it must therefore be denied.

4. Williams v. Connolly, supra, 227 F.Supp. at 546.

5. See: Williams v. Connolly, supra, n. 7, at 227 F.Supp. 546–547.
   Texacon also seeks to invoke some of the language in Fourth Northwestern Nat'l Bank of Minneapolis v. Hilson Industries, Inc., 264 Minn. 110, 117 N.W.2d 732 (1962). My reading of that case is that the Minnesota Supreme Court merely recognized that whether the "minimal contacts" requirement of the due process clause is satisfied must often be determined by balancing the relative interests of the plaintiff, the defendant, and the potential forum State. An individual plaintiff has a substantial need for a local forum in which his case can be heard and his State has a real interest in providing it. Thus, Minnesota may be permitted to take jurisdiction over a non-resident on the basis of substantially fewer contacts with Minnesota when the plaintiff is an individual than would be required when the plaintiff is a corporation, since a corporation could more easily bear the burden of suing in a foreign State. This Court agrees with that analysis, but feels that the contacts of Texacon with Minnesota are sufficient to allow Minnesota to take jurisdiction over this lawsuit even though the plaintiff is a corporation.