George **MUELLER**, Plaintiff,

v.

**STEELCASE, INC.**, Defendant.

No. 4–58 Civ. 333.

United States District Court
D. Minnesota,
Fourth Division.

March 10, 1959.

Ernest A. Rich of Rich & Johnson, Minneapolis, Minn., for defendant in support of motion.

R. G. Johnson of Lauerman & Johnson, Olivia, Minn., for plaintiff in opposition.

NORDBYE, Chief Judge.

This action is before the Court on defendant's motion to quash service of process upon it.

From the complaint and affidavits the following facts appear: George Mueller, plaintiff, purchased an office chair some time prior to December 7, 1957, from the Kemske Paper Company of New Ulm, Minnesota. Kemske was a dealer in office supplies. Defendant, Steelcase, Inc., a Michigan corporation, had sold this chair to Kemske in 1952. On December 7, 1957, or thereabouts, a spindle on the chair broke, apparently causing Mueller to fall from the chair and sustain certain injuries. Mueller brings suit against Steelcase alleging faulty design, negligent construction, and breach of an implied warranty that the chair was fit for the purposes for which it was intended. Service of process upon Steelcase was made pursuant to M.S.A. § 303.13(3), which states:

"(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corpora-

tion commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota." As amended Laws 1955, c. 820, § 30; Laws 1957, c. 538, § 1.

Steelcase neither owns nor leases any property in Minnesota. It is not licensed to do business in the State and has no resident agent here. The only company representative who enters Minnesota is a salesman who resides in Iowa. The salesman takes only about ten per cent of the orders originating in Minnesota. The remainder of the orders are placed directly by the retailers with the Steelcase plant in Grand Rapids, Michigan. All orders sent to Minnesota retailers are sent by prepaid freight from the factory, and billings also are made from the factory. The showing does not indicate whether this chair was sold through defendant's salesman or ordered directly from the factory. Steelcase does not at-

tempt to maintain any control over retailers who sell its products, and it has no contact with the ultimate consumer. The defendant's salesman carries no products of the company on his visits to this State. He has no duties in connection with collecting bills due the company or the adjustment of complaints. The defendant carries on no advertising of its products within the borders of this State.

Steelcase contends that service upon it was invalid for two reasons: (1) That the statute (303.13(3)) is not intended to reach any defendant who has not actually committed a tortious or an alleged tortious act within the State of Minnesota; (2) that if the statute is construed so as to reach this defendant, who was not performing any business in this State, then it violates the due process clause of the 14th Amendment to the United States Constitution.

■■ At the outset it seems reasonably clear that the business contacts which the defendant had in this State were extremely scanty, and to require the defendant to defend this tort claim in this State under the admitted factual circumstances would not comport with the "traditional notions of fair play and substantial justice" referred to in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. The basic qualities of fair play are not even remotely met. Except for the desultory trips taken by defendant's Iowa salesman into this State for the purpose of soliciting business, defendant has neither contacts nor connections in Minnesota. The comparatively little business which is solicited in this State through its salesmen gives rise exclusively to Michigan contracts. We are not concerned here with the police power of the State in its exercise of jurisdiction over non-resident motorists who use our highways, or over non-resident insurance corporations which carry on an insurance business with our citizens. See Watson v. Employers Liability Assur. Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. It is not suggested that the sale of an ordinary swivel chair to a merchant in this State creates some extraordinary hazard so as to demand the exercise of the State's police power in order to protect its citizens from negligence in their manufacture. It would seem that, under the admitted circumstances, it cannot be seriously suggested that, in absence of the statute relied upon, the jurisdiction of the Minnesota courts could be exercised over the defendant in this controversy. True, plaintiff does point out that the Minnesota tort law would apply and that plaintiff's witnesses reside here. Also, it is contended that defendant could come into Minnesota and defend this lawsuit with less burden upon it than to require plaintiff to go to the State of Michigan in order to present his lawsuit. But, obviously, these factors alone are not controlling. And on the other side of the coin, one must consider the heavy burden which will rest upon the defendant in defending this claim in this State. The spindle involved in the case which allegedly broke was not manufactured by the defendant. It was purchased by it from the Gorden Manufacturing Company of Grand Rapids, Michigan, an independent concern. The spindle was already threaded and ready for installation in the chair when it was purchased by the defendant. The test of liability is that when an article is manufactured which if used in the ordinary manner will subject the user to the unreasonable risk of a substantial personal injury if the article is negligently manufactured, the manufacturer is required to use reasonable care in its manufacture, and if it fails to do so, it is liable for the bodily harm caused to the user when the article is used in the manner and for the purpose for which it was manufactured. Consequently, the care used by the manufacturer of the spindle, as well as the care exercised by the defendant in its inspection thereof, would be matters as to which testimony would have to be obtained and witnesses with respect thereto

brought from the State of Michigan to to the State of Minnesota. Indeed, under the statute as framed, the most frivolous lawsuit could be lodged against a distant foreign corporation and require it to bring witnesses many hundreds of miles from its home into this State.

However, plaintiff urges that the Minnesota Legislature intended to extend to the utmost not only its jurisdiction over tortious acts committed in this State by foreign corporations, but also where any foreign corporation committed a tort in part in this State; that is, by legislative fiat, when a foreign corporation allegedly guilty of performing in whole or in part a tort against a resident of this State, the statute ipso facto decrees that such foreign corporation was doing business in this State, and hence is required to come into our courts and defend the claim even though the only business connection in the State was the single tortious act committed in whole or in part. So, here, although the alleged wrong in the manufacture of the chair took place in the State of Michigan, the proximate result of that wrong allegedly took place in the State of Minnesota and hence it is urged that the tort in part took place within this State. Consequently, plaintiff takes the position that the admitted facts present a factual situation that clearly comes within the purview of the statute.

The only other State which has a statute substantially identical with that of Minnesota, according to the briefs filed by counsel, is the State of Vermont. Mention also is made of a statute of West Virginia, but apparently that statute has never been construed by the courts. The Supreme Court of Vermont has passed on its statute but once. That decision is found in Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193. In that case, however, the tort under consideration was committed wholly within the State of Vermont in that the foreign corporation came into that State and negligently repaired a house therein, causing damage. But without attempting to discuss the soundness of the Vermont decision, it seems evident that the factual situation here is drastically different. In the Vermont case, the foreign corporation came into the State and was actually and realistically performing business therein in repairing the house of the plaintiff. It entered the State to perform that business and hence was deemed to have assented to the conditions of the Vermont law.

A mere isolated act may constitute the doing of business in a State. But here this defendant performed no tortious act in Minnesota. Moreover, it was not conducting any business in this State within the concept of that term as defined by the well-considered decisions. It may be, as plaintiff urges, that Minnesota has attempted by this statute to thrust aside all prior concepts of that which constitutes the doing of business by a foreign corporation in the State and has endeavored to wipe out all jurisdictional barriers where any part of the commission of a tort in this State damaging a citizen may be attributed to a foreign corporation. But such an attempt baldly offends the Federal Constitution. If jurisdiction of a foreign corporation is to be sustained under the circumstances presented here, then if a citizen of Minnesota goes to another State and purchases an article of merchandise from a foreign corporation there and takes it back with him to this State, it would follow that if the article was negligently made and as a proximate result thereof the purchaser or even a user of the article is injured, he would have a right to institute an action in this State for negligence and obtain jurisdiction over the foreign corporation by service on the Secretary of this State, although the corporation conducted no business whatsoever in this State. Obviously, an attempt to lodge a suit in this State under such circumstances and to require the seller to come here to defend, offends the very basic elements of fair play and substantial justice. If jurisdiction were sustained in this case, the door would be open to

practically unlimited jurisdiction over foreign corporations and the concept of the required contacts and connections in this State to sustain jurisdiction would be entirely whittled away. The declaration that the proximate result in Minnesota of a tortious act committed in another State by this defendant constitutes the doing of business in this State cannot be reconciled with the Federal constitutional rights accorded a foreign corporation which has such meager contacts and connections in this State.

In the final analysis, service of process against foreign corporations under state statutes must be tested by Federal law, and the landmark case in that regard is the International Shoe Company case, supra. The court there stated that the demands of due process

"may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra, [2 Cir., 45 F.2d 139] 141."

The court stated further, 326 U.S. at page 319, 66 S.Ct. at page 159,

" * * * The test is not merely as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in*

*personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations."

Here, this defendant has no "contacts, ties, or relations" in this State within the concept of the teachings of the International Shoe Company case. Jurisdictional rights are of substance, and at least they deserve consideration from the viewpoint of fair play and substantial justice. The enactment of this statute is a classic example of an attempt by a State to eliminate by one fell swoop all such jurisdictional rights of a foreign corporation in a tort claim against it when damage has resulted to a Minnesota citizen. This statute assumes to obliterate all conditions precedent heretofore considered essential to the State's jurisdiction over a foreign corporation in a tort action. It seems evident that the enforcement of this statute under the circumstances herein cannot be sustained under the due process clause of the Federal Constitution.

A consideration of the cases which have commented upon similar jurisdictional questions need not be set forth in any detail. Helpful discussions, however, of the question involved will be found in Johns v. Bay State Abrasive Products Co., D.C.D.Md.1950, 89 F.Supp. 654; Putnam v. Triangle Publications, Inc., 1957, 245 N.C. 432, 96 S.E.2d 445; Hellriegel v. Sears Roebuck & Co., D.C. N.D.Ill.1957, 157 F.Supp. 718; Florio v. Powder Power Tool Corp., 3 Cir., 1957, 248 F.2d 367; Haas v. Fancher Furniture Company, D.C.D.Ill., 1957, 156 F. Supp. 564; Compania De Astral, S. A. v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, dissent 108 A.2d 372, 49 A.L.R. 2d 646, certiorari denied 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738; Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F.2d 502.

It follows from the foregoing that defendant's motion to quash the attempted service of summons upon it is hereby granted. It is so ordered. An exception is allowed.