Edward J. PENDZIMAS and Margaret
L. Pendzimas, Plaintiffs,

v.

EASTERN METAL PRODUCTS CORPORATION, Defendant.

No. 4-60 Civil 221.

United States District Court
D. Minnesota,
Fourth Division.
April 28, 1961.

M. W. Gaughan, Minneapolis, Minn., for defendant, in support of motion.

K. R. Pearson, of Robins, Davis & Lyons, Minneapolis, Minn., for plaintiffs, in opposition thereto.

NORDBYE, District Judge.

This cause comes before the Court on defendant's motion for an order quashing, vacating and setting aside the service of the summons and complaint purportedly made upon it by serving the Secretary of State of the State of Minnesota, and for an order of dismissal herein.

The complaint alleges that the defendant, a corporation with its principal officers in Tuckahoe, New York, is engaged in the manufacture and sale of certain household appliances, including an electrical cooking device known as a deep fry, which product, according to the complaint, was sold by a retailer in Minnesota to plaintiffs in this State. The complaint alleges that the fryer was carelessly and negligently manufactured and assembled, whereby it functioned improperly and caused the overheating of cooking oil used therein, resulting in an explosion which caused personal injury to Margaret L. Pendzimas, one of the plaintiffs, and whereby Edward J. Pendzimas, her husband, sustained damages by reason of the personal injury to his wife.

The motion is based upon the following affidavit:

"SEYMOUR TROY, being duly sworn, deposes and says:

"I am the President of Eastern Metal Products Corporation, which has been named as the defendant in the above entitled action.

"I reside at 15 Southfield Road, Mt. Vernon, New York, and have my offices at 135 Marbledale Road, Tuckahoe, New York, Eastern Metal Products Corporation is a corporation organized under the laws of the State of New York, and was engaged until 1957 in the business of assembling and distribution of deep fryers.

"Eastern Metal Products Corporation maintains no warehouse facilities but prior to and in 1957 did maintain warehouse facilities at Tuckahoe, New York, and Fort Smith, Arkansas.

"Eastern Metal Products Corporation does not have any office in the State of Minnesota. It has no warehouse space in Minnesota and has no employee or agent in the State of Minnesota. It owns no property of any kind in the State of Minnesota.

It has never been authorized to do business in the State of Minnesota by the authorities of the State of Minnesota.

"This action did not arise out of any business transacted by Eastern Metal Products Corporation with any resident of the state of Minnesota and this action does not arise out of anything done by the Eastern Metal Products Corporation in the State of Minnesota.

"The deep fryers, Model RF 90, according to the records of the Eastern Metal Products Corporation, were shipped in response to an order through the mail of World Enterprise, 509 Hennepin Avenue, Minneapolis, Minnesota, a wholesaler. That the records of Eastern Metal Products Corporation show no dealings with Hannah's Furniture and Appliance Store, 707 East Lake street, Minneapolis, Minnesota, nor with any Hannah's Furniture and Appliance Store at any location. Eastern Metal Products Corporation has no knowledge or information as to what disposition was made of said deep fryer after it was shipped F.O.B. New York City, or F.O.B. Ft. Smith, Arkansas.

"All orders by wholesalers, retailers and independent factory representatives from Minnesota were placed directly with the Eastern Metal Products Corporation's factory located at Tuckahoe, N.Y. and/or Ft. Smith, Arkansas, for acceptance. All orders sent to Minnesota wholesalers and retailers were sent by collect freight from the Eastern Metal Products Corporation factory and billings were also made from said factory.

"Eastern Metal Products Corporation has and had no control over wholesalers and retailers in the State of Minnesota and has and had no contact with the ultimate consumers. Eastern Metal Products Corporation carried on no advertisement of its products within the State of Minnesota.

"Seymour Troy"

There is no showing by the plaintiffs as to any activities in this State by the defendant other than those stated in the above affidavit. Service was purportedly obtained by serving the Secretary of State and jurisdiction is based upon the following Minnesota statute, the pertinent portions of which read as follows (Sec. 303.13 subd. 1(3), Minn.Stat. Ann.):

"If a foreign corporation * * commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota * * * to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such * * * tort * * *."

The question submitted is substantially the same as that which was before this Court in Mueller v. Steelcase Co., Inc., D. C., 172 F.Supp. 416. Since that decision, however, the Supreme Court of Minnesota has handed down three decisions, to wit, Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670; Atkins v. Jones & McLaughlin Steel Co., 258 Minn. 571, 104 N.W.2d 888 [1]; and Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N.W.2d 831. In Atkins v. Jones & McLaughlin Steel Co., supra, the Supreme Court upheld the constitutionality of the statute here involved and determined that the statute did not deny the defendant due process under the Federal Constitution. In that case the plaintiff was injured in this State while unloading containers of hydrofluosilicic acid, the product of the defendant, a corporation

[1]. See discussion of this case in Minnesota Law Review, November 1960 issue, page 127.

organized in New York, not qualified to do business in this State and which did no·business herein except that which allegedly arose under the Minnesota statute above quoted. It had, however, sold its product to customers in Minnesota for some fifty years f. o. b. New York. But the court apparently did not consider the length of time defendant had sold its merchandise to customers in Minnesota a matter of any significance. It was the single tortious act in New York causing the injury to plaintiff in Minnesota which was held to be the doing of business herein sufficient to sustain the service of process under the Minnesota statute.

But notwithstanding the views of the Minnesota Supreme Court in these recent cases, I am constrained, in light of the present factual situation, to adhere to the views expressed in the Mueller case, with some further amplification and possible clarification. In that case I stated that the defendant "performed no tortious act in Minnesota." In making that statement, I was fully aware that we do not have an actionable tort until someone is injured. The tort may be localized here because it was in this State that the last of the events took place which would make the tortfeasor liable. However, neither in the Mueller case nor in the instant situation did the defendant come into this State and perform a tortious act.[2]

■■■ No doubt due process may be sustained where there is a single act transaction in a State by a foreign corporation. The entering into a contract in whole or in part, or the commission of a tort in whole or in part in this State by a foreign corporation may meet the minimal contacts which square with the principles of due process as enunciated in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. But in the instant case, according to the showing made

herein, the defendant has not had even the barest vestige of any contacts, realistically considered, within the State of Minnesota. The Court fully recognizes that in light of the modern trend of the decisions, it is not necessary to find that the defendant is "present" in the State. Nor is it necessary to find that by reason of its activities herein, it is constructively here. However, it is difficult, consistent with the teachings of the weight of authority, to find any support for the fiction that, by reason of a single sale of merchandise to a Minnesota wholesaler consummated in another State, a negligent foreign corporation, *without more*, has therefore by a so-called voluntary act, brought this litigation into being in this State and subjected itself to process herein because here the last event took place which would make it liable for its tort.

The fryer was sold to a wholesaler in this State f. o. b. either New York or Fort Smith, Arkansas, with freight collect. Title passed to the wholesaler before the merchandise reached the borders of Minnesota. Defendant took no advantage of any of the facilities of this State when it shipped the product in the manner indicated. It has not availed itself of the benefits of the police or fire protection of the State, or in any other manner availed itself of any privileges which might have been accorded by the State of Minnesota to those whose merchandise finds customers herein. The instant situation, so far as the jurisdiction of the Minnesota courts is concerned, cannot be differentiated from one where a resident of Minnesota goes to New York and buys an article which the seller knows will be transported and used in this State. If thereafter an injury occurs from the use of the article in Minnesota by reason of negligence in its manufacture, it is difficult to understand that on such tenuous grounds the Minnesota

2. This case, therefore, is clearly distinguishable from Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193, where the "foreign corporation came into that State and negligently repaired a house therein, causing damage" to a Vermont resident. Mueller v. Steelcase, Inc., supra, 172 F.Supp. at page 419.

Legislature by legislative fiat can pronounce that such a commission of a tort in this State constitutes the doing of business herein. It is true that merchandise negligently manufactured and sold in interstate commerce to a Minnesota wholesaler by a foreign corporation with no other contacts herein is controlled by Minnesota law if the proximate result of the negligent manufacture of the merchandise results in injury to a Minnesota resident. But the demands of due process are not satisfied merely because the law of the place where the injury took place determines whether a person has sustained a legal injury.

The conclusion of the Minnesota Supreme Court in the Atkins case would seem out of harmony with the timely caution announced in Hanson v. Denckla, (1958) 357 U.S. 235, p. 251, 78 S.Ct. 1228, p. 1238, 2 L.Ed.2d 1283, wherein the court stated,

"* * * At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714 [24 L.Ed. 565], to the flexible standard of International Shoe Co. v. Washington, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

And in view of this caveat of the Supreme Court, we may well pose the question here as to what "minimal contacts" compatible with fair play and justice have been established in support of the jurisdiction of the Minnesota courts to exercise power over the defendant in the instant proceeding. It is not even suggested that the selling of an electric fryer to a wholesaler in Minnesota creates a serious economic impact or "physical danger" to citizens of this State. The instant situation as to the power of the State over nonresident corporations cannot be compared with the use of our highways by nonresident drivers of dangerous instrumentalities or with the issuance by mail of insurance policies to citizens of this State by nonresident and nonqualified insurance companies with their resulting local problems. Activities of this foreign corporation completely outside of this State do not, under the showing herein, justify the application of this Minnesota statute without running counter to well-established principles of due process.

For an excellent discussion of this entire subject, see Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502 (4 Cir., 1956), wherein Judge Sobeloff, speaking for the court, discusses and distinguishes many of the cases the Minnesota Supreme Court referred to in the Atkins case. In holding a North Carolina statute comparable to the Minnesota statute violative of due process, the court made the following concluding statement which is highly pertinent here (239 F.2d 502, p. 509):

"* * * If one State may, without violation of the due process clause, extend the authority of its courts beyond its boundaries over persons and situations not sufficiently related to that State, the separate identity of the States will be reduced to a mere fiction. Individual states could undertake at the expense of other States to enlarge the sphere of their authority to nationwide dimensions. It requires no flight of fancy to foresee the resulting maze of lawsuits adjudicating the interests of persons having only the faintest and most remote links with the State exercising authority. If the due process clause is not effective to restrain such extensions of local power, then

the federal system is likely to be transformed into something very different from anything we have known."

Granted that the Minnesota statute may be constitutional when applied to certain factual situations in which there are sufficient minimal contacts of sufficient quality and quantity to square with the principles of fair play and justice, the Court would, however, be making an alarming departure from the reasoning to be found in the great weight of applicable authority[3] in the event the Minnesota statute on this showing were held to be nonviolative of the due process clause of the Federal Constitution. I do not understand that the mere enactment of a State statute expands the concepts of doing business so as to create power in that State over a foreign corporation beyond the standards of jurisdictional due process.

■ It does not seem necessary to weigh the respective burdens of trying this lawsuit in Minnesota or in a forum where jurisdiction in personam may be obtained over the defendant. The relative burden of the expense to be borne by the parties with respect to the forum in which a lawsuit is to be tried cannot be a controlling consideration in determining the basic questions of due process. Moreover, there is no showing before this Court as to the relative burdens which would befall the parties if jurisdiction were or were not retained here. Concededly, the burdens resting upon a foreign corporation in defending lawsuits throughout the nation, frivolous or otherwise, should not be lightly minimized merely because the seller of merchandise may be more affluent than the customer.

There is another aspect to the question of jurisdiction which the court in Erlanger Mills v. Cohoes Fibre Mills, supra, emphasized (239 F.2d 502, p. 507):

"Furthermore, to sustain jurisdiction here would not only be of-fensive to the due process clause, but it would involve the danger of grave burdens and impediments to interstate commerce, if the door should be opened to similar legislation by other States. Davis v. Farmers' Cooperative Equity Co., supra [262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996]; Atchison, T. &. S. F. R. Co. v. Wells, 265 U.S. 101, 44 S.Ct. 469, 68 L.Ed. 928; cf. Denver & Rio Grande Western Railroad Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295; and International Milling Co. v. Columbia Transportation Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396. To illustrate the logical and not too improbable extension of the problem, let us consider the hesitancy a California dealer might feel if asked to sell a set of tires to a tourist with Pennsylvania license plates, knowing that he might be required to defend in the courts of Pennsylvania a suit for refund of the purchase price or for heavy damages in case of accident attributed to a defect in the tires. As in the hypothetical case, the sale in the principal case was 'with the reasonable expectation that these goods are to be used or consumed in [the vendee's domicile] and are so used and consumed.' It is difficult to conceive of a more serious threat and deterrent to the free flow of commerce between the states."

■ The Court is reluctant to depart from the holding of the Minnesota Supreme Court in the Atkins case, but we are confronted here with a Federal question, not a State question, and where the Minnesota Supreme Court assumes to depart with apparent unlimited latitude from the pronounced weight of authority in determining the concepts of minimal contacts of a foreign corporation in a State necessary to sustain jurisdiction, I have concluded to follow the Mueller case with the hope that this matter may reach the Court of Appeals and ultimate-

---

3. See cases cited in Mueller v. Steel Case, Inc., supra, 172 F.Supp. at page 420.

ly the Supreme Court so that the question finally may be set at rest.

It follows from the foregoing that the motion to quash and vacate the service of the summons and complaint herein is granted and that this proceeding be dismissed because of lack of jurisdiction. It is so ordered. An exception is reserved.