John Paul DOTTERWEICH, Plaintiff,

v.

YAMAHA INTERNATIONAL CORPORATION, a California Corporation, and a subsidiary of Yamaha Motor Company, Ltd., a Foreign Corporation, et al., Defendants.

No. 4–73 Civ. 572.

United States District Court,
D. Minnesota,
Fourth Division.

June 29, 1976.

sue before the court is whether this court may exercise *in personam* jurisdiction over the Japanese corporations pursuant to the Minnesota "single act" long-arm statute, Minn.Stat. § 303.13 Subd. 1(3).

The record presently before the court indicates that plaintiff purchased a used 1971 Yamaha SL 292 snowmobile from Sembauer Sport Sales in Montgomery, Minnesota, on January 1, 1972. On or about March 25, 1972,[1] the date of the injury, plaintiff was attempting to clean the snowmobile track to prepare the snowmobile for summer storage. Plaintiff stood behind the machine and lifted the rear portion of the machine off the ground while directing his wife to operate the throttle in such a manner that the snowmobile track would turn slowly. While the track was rotating it became disconnected from the machine and struck plaintiff in the leg causing the injuries complained of in the complaint.

Defendant Yamaha Motor Company, Ltd. (Yamaha Motor) is a publicly held Japanese corporation with its principal place of business in Japan. Yamaha Motor manufactures motorcycles, snowmobiles, spare parts, and accessories; none of which is manufactured in the United States. Yamaha Motor is not registered to do business in Minnesota and has never maintained an office or place of business in Minnesota or anywhere in the United States. No agents or employees of Yamaha Motor have ever transacted business in Minnesota, nor has it maintained a telephone number or bank account in the State of Minnesota.

Snowmobiles and other products manufactured by Yamaha Motors for export to the United States are sold f. o. b. Japan port to defendant Yamaha International Corporation (Yamaha International) and Yamaha Parts Distributors Incorporated of Buena Park, California. Yamaha International is a distinct corporate entity and is not a subsidiary of Yamaha Motor; nor does Yamaha Motor own or control any stock of Yamaha International. Two of the

Jeffrey L. Flynn, Grose, Von Holtum, Von Holtum, Sieben & Schmidt, Ltd., Minneapolis, Minn., for plaintiff.

Roger R. Roe, Jr., Rider, Bennett, Egan, Johnson & Arundel, Minneapolis, Minn., for Yamaha International Corp. and Yamaha Motors Co., Ltd.

Donald Chance Mark, Jr., Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for Yokohama Rubber Co., Ltd.

## MEMORANDUM AND ORDER

ALSOP, District Judge.

Plaintiff was injured when the track of his snowmobile became disconnected from the snowmobile and struck him in the leg. Plaintiff initiated an action against the corporations that manufactured the track and the snowmobile, both from Japan, and the California corporation that distributes the snowmobiles in the United States. The is-

---

1. The deposition of plaintiff filed October 4, 1974, indicates that the date of the accident was April 1, 1972, rather than the March 25, 1972, date mentioned in the complaint. Deposition of John Paul Dotterweich at 14–15.

directors of Yamaha Motor also act as two of the five directors of Yamaha International. Yamaha Motor and Yamaha International hold separate board of directors meetings in their respective locales. Yamaha Motor does not supervise or control the business affairs of Yamaha International nor does it become involved in selecting or contracting with retail dealers in the United States; Yamaha International enters into franchise agreements with dealers.

Yokohama Rubber Company, Ltd. (Yokohama), a corporation organized under the laws of Japan, manufactures a wide range of rubber based products including tires and tracks for snowmobiles. Yokohama does not have any office or representative agent in the State of Minnesota. A Yokohama subsidiary, Yokohama Tire Corporation (a California corporation), does purchase tires from Yokohama and import them for distribution in the United States. Snowmobile tracks manufactured by Yokohama are sold directly to the snowmobile manufacturer and installation of the track is performed by the snowmobile manufacturer.

For purposes of these motions, the court assumes the application of the above facts to be as follows: Yokohama manufactured a snowmobile track at its plant in Japan that was sold to Yamaha Motor. Yamaha Motor installed that track on one of its snowmobiles as a part of the manufacturing process at its Japan plant. Yamaha Motor sold the snowmobile f. o. b. Japan port to Yamaha International and Yamaha International imported the snowmobile to the United States. The snowmobile eventually made its way to Sembauer Sport Sales in Montgomery, Minnesota, where it was initially sold to a Minnesota resident, returned to Sembauer (presumably through a trade-in), and sold by Sembauer to the plaintiff in this action.

Presently before the court is the motion of Yamaha Motor for an order dismissing the complaint for lack of personal jurisdiction and lack of subject matter jurisdiction. Also before the court is the motion of Yokohama for an order dismissing the complaint based on lack of subject matter juris-

diction, lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. A motion by Yokohama Tire Company for summary judgment was granted by the court by order dated March 12, 1976.

█ It is axiomatic that the determination of whether this court can assert *in personam* jurisdiction over the defendants pursuant to the Minnesota "single act" long-arm statute. Minn.Stat. § 303.13 Subd. 1(3), turns on two considerations: (1) "what Minnesota has established as the limits of its jurisdiction over foreign corporations under its statute;" and (2) "if these limitations do not exclude the present suit, whether its inclusion complies with due process under the Fourteenth Amendment." *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 190 (8th Cir. 1965). The first of these considerations is a question of state law, the second of federal law. *Williams v. Connolly*, 227 F.Supp. 539, 540 (D.Minn. 1964).

The Minnesota long-arm statute at issue in the present case, Minn.Stat. § 303 Subd. 1(3), provides in relevant part as follows:

If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. . . .

The Supreme Court of Minnesota has repeatedly held that it will interpret the long-arm statutes of the state to extend jurisdiction to the outermost limits consistent with the requirements of due process. *Franklin Mfg. Co. v. Union Pacific R. Co.*, 297 Minn. 181, 210 N.W.2d 227 (1973); *Hunt v. Neva-*

da State Bank, 285 Minn. 77, 172 N.W.2d 292 (1969), *cert. denied sub nom.,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). *See McQuay, Inc. v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902 (D.Minn.1971). This policy was recently affirmed in *American Pollution Prevention Co. v. National Alfalfa Dehydrating and Milling Co.,* 230 N.W.2d 63, 65 (Minn.1975), where the court stated:

> Decisions of this court have consistently found in § 303.13 a legislative intent to extend Minnesota's extraterritorial jurisdiction to the maximum limits permitted by due process. [citations omitted]

In the instant case, the defendants contend that the court should rule, based on state law, that the long-arm statute does not apply. In particular, the defendants argue that no tort was committed in the State of Minnesota and thus Minn.Stat. § 303.13 Subd. 1(3), on its face, does not apply. The basis of defendants' argument is that since defendants do not do business in the State and do not have any agents or employees within the State, defendants could not have committed "a tort in whole or in part in Minnesota." While defendants' position is interesting, it is clearly contra to the law in the State of Minnesota. The Minnesota Supreme Court has stated:

> We have previously held that the negligent manufacture of a product in a foreign state becomes a tort committed "in whole or in part in Minnesota" when personal injury occurs in Minnesota as a result of use of the product here. *Atkins v. Jones & Laughlin Steel Corp.,* 258 Minn. 571, 104 N.W.2d 888; *Adamek v. Michigan Door Co.,* 260 Minn. 54, 108 N.W.2d 607. See also, *Beck v. Spindler,* 256 Minn. 543, 99 N.W.2d 670; *The Dahlberg Co. v. Western Hearing Aid Center,* 259 Minn. 330, 107 N.W.2d 381; *Paulos v. Best Securities Inc.,* 260 Minn. 283, 109 N.W.2d 576. Cf. *Fourth Northwestern*

Nat. Bank of Minneapolis v. Hilson Industries, Inc., 264 Minn. 110, 117 N.W.2d 732.

*Ehlers v. U. S. Heating & Cooling Mfg. Corp.,* 267 Minn. 56, 124 N.W.2d 824, 826 (1963). The court is satisfied that the Minnesota Supreme Court would rule that Minn.Stat. § 303.13 Subd. 1(3) would apply under the present factual situation and thus this court, applying Minnesota law, will rule that the long-arm statute is applicable. The remaining issue is whether the exercise of jurisdiction pursuant to § 303.13 Subd. 1(3) complies with the demands of federal due process. While Minnesota Supreme Court cases,[2] to the extent they deal with the due process issue, are of weight, the issue is one to be determined in light of federal court precedents.

Defendant Yamaha Motor argues that the due process issue should be decided in accord with two prior decisions of the District Court for the District of Minnesota. *Pendzimas v. Eastern Metal Products Corp.,* 218 F.Supp. 524 (D.Minn.1961) (Nordbye, J.); *Mueller v. Steelcase, Inc.,* 172 F.Supp. 416 (D.Minn.1959) (Nordbye, J.). In *Mueller,* a Minnesota plaintiff was physically injured when he fell from a breaking chair that was purchased from a Minnesota company which sold office supplies. The plaintiff sued the Michigan corporation that manufactured the chair at its plant in Michigan. The defendant owned no property in the State of Minnesota, was not licensed to do business in the state, and had no resident agent in the state. The only representative of the defendant corporation that entered the state was an Iowa based salesman who obtained approximately ten per cent of his orders from Minnesota.[3] *Mueller v. Steelcase, Inc., supra,* 172 F.Supp. at 417. At least partially based on the fact that the defendant had not committed a "tortious act" within Minnesota,[4] the district court

---

2. See in particular *Ehlers v. United States Heating & Cooling Mfg. Corp., supra; Atkins v. Jones & Laughlin Steel Corp.,* 258 Minn. 571, 104 N.W.2d 888 (1960).

3. Some orders were also sent directly from the retailer to the factory. There was no showing

whether the chair involved in this case was sold through the Iowa based salesman or was ordered directly from the defendant's plant.

4. See *Atkins v. Jones & Laughlin Steel Corp., supra,* for a discussion of a "tortious act" as

declined to exercise jurisdiction. It is also clear that the district court did not feel that defendant had sufficient contacts with the state to require it to defend a lawsuit in Minnesota. *Id.* at 418.

A mere isolated act may constitute the doing of business in a State. But here this defendant performed no tortious act in Minnesota. Moreover, it was not conducting any business in this State within the concept of that term as defined by the well-considered decisions. It may be, as plaintiff urges, that Minnesota has attempted by this statute to thrust aside all prior concepts of that which constitutes the doing of business by a foreign corporation in the State and has endeavored to wipe out all jurisdictional barriers where any part of the commission of a tort in this State damaging a citizen may be attributed to a foreign corporation. But such an attempt baldly offends the Federal Constitution. . . . If jurisdiction were sustained in this case, the door would be open to practically unlimited jurisdiction over foreign corporations and the concept of required contacts and connections in this State to sustain jurisdiction would be entirely whittled away.

. . .

*Id.* at 419–20.

In the *Pendzimas* case, defendant was a New York corporation that manufactured household appliances including a cooking unit called a deep fry. Defendant did not have an office in Minnesota, own property in the State, nor have any agent or employee in the State. Defendant's only contact with Minnesota was that it sold appliances to wholesalers, retailers, and factory representatives f. o. b. New York City or Ft. Smith, Arkansas. Plaintiff was injured by a deep fry that had been purchased from a

Minnesota retailer who had apparently obtained it from a Minnesota wholesaler who, in turn, had ordered it from the defendant manufacturer. The court dismissed the complaint for lack of personal jurisdiction holding that defendant did not have sufficient "minimal contacts" with the State to justify the exercise of jurisdiction. The court further indicated "that the selling of an electric fryer to a wholesaler in Minnesota [does not] create . . . a serious economic impact or 'physical danger' to citizens of this State." *Id.* at 528.[5]

The demise of this rather conservative jurisdictional philosophy was signaled by other decisions in the District of Minnesota. In *Williams v. Connolly*, 227 F.Supp. 539 (D.Minn.1964), Judge Larson, while denying the exercise of jurisdiction in a long-arm case involving an explosion in a motel room,[6] cautiously indicated that he did not agree with the due process analysis in *Pendzimas* and *Mueller*. *Id.* at 544. The court discussed the landmark Supreme Court cases, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and noted the trend toward expansion of jurisdiction. *Id.* at 543–44. The court also discussed, with approval, the Illinois Supreme Court decision in *Gray v. American Radiator and Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), and stated:

Given the facts hypothesized, this Court is in agreement with the *Gray* analysis. A corporation placing its products in the stream of national commerce is in a very real sense availing itself of the privilege of conducting activities within each State

compared to a tort committed in whole or part in the state.

5. It should be noted that the only information available to the court concerning the defendant's contacts in the State were contained in defendant's affidavit. *Pendzimas v. Eastern Metal Products Corp., supra*, 218 F.Supp. at 526.

6. Plaintiff was a California resident and therefore the tort provisions of Minn.Stat. § 303.13 Subd. 1(3) did not apply. The court analyzed the allegations in terms of a contract action and concluded that there had been no showing of a contract between plaintiff and defendant and no showing of sufficient minimal contacts between defendant and the State of Minnesota. *Id.* at 548–49.

its products may ultimately enter. In addition to whatever direct reliance on the laws of a State might be necessary in any particular case, benefits from a national commerce depend upon an ordered legal system in each State making up the nation, and one who participates in this commerce takes advantage of the ordered system of laws prevailing in all fifty States. Under such circumstances the State, which as a practical matter must open its borders to this commerce, has an important interest in providing a forum for its injured residents. [citations omitted]

*Id.* at 546. See *Carlson v. Chatfield Machinery Co.*, 228 F.Supp. 162 (D.Minn.1964) (Donovan, J.) (court exercised jurisdiction over a foreign corporation which manufactured a saw alleged to be the cause of decedent's death) and *Thompson v. Kiekhaefer*, 372 F.Supp. 715, 719–20 (D.Minn. 1973) (Larson, J.) (court denied jurisdiction over a foreign corporation in a libel action because of lack of minimum contacts, but discussed the liberal approach to personal jurisdiction over nonresidents in products liability actions).

In *Uppgren v. Executive Aviation Services, Inc.*, 304 F.Supp. 165 (D.Minn.1969) (Neville, J.), the decedent was killed in a helicopter crash in northern Minnesota. Plaintiff, trustee of the estate, brought an action against, among others, the foreign corporation that had sold the helicopter to decedent's employer. The defendant corporation had no contacts with the state except for the "fortuitous circumstance" that the helicopter crashed in Minnesota. The court acknowledged the expansion of jurisdiction in products liability cases but ruled that the exercise of jurisdiction in this factual setting would be a denial of due process.

In many cases application of a "one act" statute does not produce unconstitutional results because the alleged defective product is mass-produced and in extensive commercial use in the forum state. Usually the foreign corporate defendant derives substantial revenue from goods used or consumed in the state or at least expects or should reasonably expect

that his conduct will have consequences in the state and he derives substantial revenue from interstate or international commerce. When these additional factors are not clearly present, however, as in the instant case, the per se amenable rule urged by plaintiff and Hughes Tool can produce consequences which offend the 'traditional notions of fair play and substantial justice.' [citations omitted]

*Id.* at 170.

In the landmark jurisdictional decision of the Eighth Circuit, *Aftanase v. Economy Baler Co., supra,* the court was confronted with a factual situation in which the plaintiff, a Minnesota resident, was injured in the State of Minnesota while operating a metal baling machine that his employer purchased from a Michigan corporation. The defendant manufacturer had no office or employee in the State of Minnesota nor had it ever qualified to do business in Minnesota. The defendant had, however, sold metal balers to Minnesota residents for some years f. o. b. Ann Arbor, Michigan, through independent salesmen who solicited orders in Minnesota. After a thorough discussion of relevant case law, the court ruled that the Minnesota long-arm statute, Minn. Stat. § 303.13, was applicable and that the application of the statute—allowing the court to exercise personal jurisdiction over the defendant—did not offend federal due process of law. *Id.* at 197. The court analyzed the exercise of jurisdiction in terms of three primary considerations, "namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts" and two secondary considerations: "interest of the forum state and convenience." *Id.*

In the instant case, the court must separately analyze the positions of defendant Yamaha Motor and defendant Yokohama to determine whether the exercise of jurisdiction would violate due process under the Fourteenth Amendment.

■ The burden is upon the plaintiff to establish the requisite minimal contacts by a defendant with the State of Minnesota in

548

order to justify the exercise of *in personam* jurisdiction. *Thompson v. Kiekhaefer, supra,* 372 F.Supp. at 720; *Uppgren v. Executive Aviation Services, Inc., supra,* 304 F.Supp. at 171; *Williams v. Connolly, supra,* 227 F.Supp. at 550. While this burden is often "quite light," it does not shift from the plaintiff to the defendant merely because it would be easier for the defendant to produce such information. *Williams v. Connolly, supra,* 227 F.Supp. at 550. Further, "[t]he Court is mindful that lesser contacts may be necessary to sustain jurisdiction for torts such as the instant action than for contract actions." *Thompson v. Kiekhaefer, supra,* 372 F.Supp. at 720.

▓▓▓ In applying the *Aftanase* principles to defendant Yamaha Motor, the snowmobile manufacturer, the court must first address the quantity of contacts between this defendant and the State of Minnesota. The court takes judicial notice [7] of the fact that a large number of Yamaha snowmobiles are sold within the State of Minnesota and that Yamaha dealers are located within the state.[8] The sale of Yamaha snowmobiles in Minnesota, although perhaps seasonable, may certainly be described as "continuous and systematic." *See Aftanase v. Economy Baler Co., supra,* 343 F.2d at 197. While the court would doubt that the sale of snowmobiles in Minnesota produces (indirectly) a substantial percentage of Yamaha Motor's overall sales volume, the court is of the opinion that such sales do constitute a substantial source of revenue in actual dollar amounts. *See Ajax Realty Corp. v. J. F. Zook, Inc.,* 493 F.2d 818, 821–22 (4th Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973). Yamaha Motor's quantity of contacts with the state are not insignificant.

The nature and quality of the contacts between defendant Yamaha Motor and the State of Minnesota raises interesting questions. In *Aftanase,* the manufacturer was

a corporation from a neighboring state whose product was shipped directly into the State of Minnesota and directly to the customer. In the present case Yamaha Motor is a corporation from a foreign country and its manufactured product reaches the State of Minnesota only after going to a distributor corporation and from the distributor to a dealer in the State of Minnesota. In both cases, the product is a powerful one which contains "potent possibilities of harm if negligently designed or manufactured." *Aftanase v. Economy Baler Co.,* 343 F.2d at 197.

In *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969), the appellant, Duple, appealed from the decision of a federal district court in Hawaii refusing to dismiss the complaint against appellant for lack of personal jurisdiction. Duple manufactured coach bodies for buses, placed them on chassis prepared by another English manufacturer, painted the completed vehicles, and shipped them to the chassis manufacturer who, in turn, shipped them to Hawaii. Plaintiff was injured when one of the buses overturned and alleged in his complaint, *inter alia,* that the roof caved in due to negligent manufacture. The Court of Appeals held that Duple had sufficient contacts with Hawaii to justify the exercise of jurisdiction since its product was present in the state and Duple had knowledge "that the product was destined for Hawaii . . . ." *Id.* at 235. The Court ruled that Duple was properly before the court even though it was a manufacturer from a foreign country.

We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that

---

**7.** Although the court will take judicial notice of the substantial number of Yamaha snowmobiles in this state, the court is of the opinion that a better method to establish the quantity of contacts would be through discovery procedures under the Fed.R.Civ.P.

**8.** The court notes that ten Yamaha snowmobile dealers are listed in the Minneapolis Yellow Pages, January 1976, at 978.

injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade. [footnote omitted]

*Id.*[9]

Other federal courts have held that the exercise of jurisdiction over a manufacturer from a foreign country is appropriate if the manufacturer has minimal contacts with the state. *Benn v. Linden Crane Co.*, 370 F.Supp. 1269 (E.D.Pa.1973); *Wells v. English Electrical Ltd.*, 60 F.R.D. 573 (W.D.La. 1973); *Saccamani v. Robert Reiser & Co., Inc.*, 348 F.Supp. 514 (W.D.Pa.1972); *Scanlan v. Norma Projektil Fabrik*, 345 F.Supp. 292 (D.Mont.1972). *See also The Founding Church of Scientology v. Verlag*, 536 F.2d 429 (D.C.Cir. 1976) (libel action).

Although Yamaha Motor does not ship its snowmobiles directly into the State of Minnesota, the court is satisfied that an element of quality in the contacts nonetheless exists. An important consideration is whether or not defendant could reasonably foresee that its product would be used in the forum state in a significant quantity and whether it would benefit "from protection afforded to the marketing of his product by the law of the forum." *Uppgren v. Executive Aviation Services, Inc., supra*, 304 F.Supp. at 170. Yamaha snowmobiles are manufactured in Japan and are sold f. o. b. Japan to Yamaha International, a non-subsidiary California corporation, for distribution in the United States. Two directors of Yamaha Motor hold similar positions for Yamaha International. Even though Yamaha Motor does not ship or sell snowmobiles directly to Minnesota residents, it is inconceivable that Yamaha Motor is not aware that a significant number of snowmobiles will reach the wintertime snow-laden State

of Minnesota and that "this activity would have consequences in the state." *Aftanase v. Economy Baler Co., supra*, 343 F.2d at 197. These factors coupled with the benefits derived from the Minnesota marketplace and the receipt of protection from Minnesota law establishes the requisite quality of contacts. *Id.* This quality is not diminished merely because the product was not directly placed in the state by defendant but rather was marketed by one whom defendant could foresee would cause the product to enter Minnesota. *Cf. Sells v. International Harvester Co.*, 513 F.2d 762 (5th Cir. 1975), *appeal pending*;[10] *Duple Motor Bodies, Ltd. v. Hollingsworth, supra; Benn v. Linden Crane Co., supra; Wells v. English Electrical, Ltd., supra; Scanlan v. Norma Projektil Fabrik, supra.*

There is no question that a direct relationship exists between the cause of action and defendant Yamaha Motor's contacts with the state. The Yamaha snowmobile was marketed in Minnesota, was used in Minnesota, and caused injury to a resident of the state. Yamaha Motor's contacts with the state, under this factual setting, revolve around the indirect placement of snowmobiles in Minnesota.

Minnesota has an interest in providing a forum for an injured resident to bring an action against a non-resident manufacturer in a products liability action. *Aftanase v. Economy Baler Co., supra.* If plaintiff cannot sue the manufacturer in Minnesota, his alternative may be to bring an action in Japan. This solution does not seem reasonable since plaintiff was injured in Minnesota by a product that defendant manufacturer placed in the stream of commerce and from which it received the protection of Minnesota law and substantial revenues.

Addressing the convenience issue, it would appear that defendant would be in-

---

**9.** Judge Ely dissented from the opinion of the court arguing that the assumption of jurisdiction in this factual setting was a denial of due process and an "unnecessary intrusion into the field of international relations." *Id.* at 236.

**10.** Where, as here, a manufacturer sells its product to a national distributor, knowing

the product will be used in all states, it does not violate due process to require the manufacturer to defend a products liability suit in that state where the accident occurs. [citations omitted]

*Sells v. International Harvester Co., supra*, 513 F.2d at 763.

convenienced by being required to defend a lawsuit in Minnesota and that the plaintiff would be equally inconvenienced if required to prosecute his action in Japan. The court will grant this factor little weight.

The court concludes that the requisite minimal contacts exist for the exercise of jurisdiction by this court and that such a result is "consistent with fair play and substantial justice and does not violate federal due process." *Id.* at 197. Defendant Yamaha Motor's motion to dismiss the complaint is denied.

The application of the *Aftanase* factors to defendant Yokohama does not produce a similar result. The court has been provided with limited information upon which to resolve the minimal contacts question as it relates to Yokohama. The burden to produce facts sufficient to justify the exercise of jurisdiction, though it be minimal, is upon the plaintiff. *Williams v. Connolly, supra,* 227 F.Supp. at 550.

■ While it could arguably be assumed that the quantity of contacts between defendant Yokohama and the State of Minnesota is not insignificant, the court declines to make such an assumption based upon the present record. The court has not even been provided with such basic information as whether every Yamaha snowmobile sold in Minnesota is equipped with a track manufactured by Yokohama. Neither has there been a showing of what percentage of the sales price represents (indirectly) revenue for Yokohama nor any other information that would provide the court with some basis for determining the quantity of the contacts. See discussion in *Stark v. Mobile Aerial Towers, Inc.,* 374 F.Supp. 1046, 1047 (W.D.La.1974).

■ The court is also of the opinion that plaintiff has not made a sufficient showing of the quality of the contacts. The product manufactured by Yokohama does not have the powerful and inherently dangerous

characteristics of the metal baler in *Aftanase* or the snowmobile manufactured by Yamaha Motor. The track is not shipped directly into the State of Minnesota but rather is shipped within Japan to the snowmobile manufacturer who incorporates it into the finished product in Japan and places the product into the distribution chain. There has been no showing that this defendant component part manufacturer could foresee that its product would reach the State of Minnesota or that it would even reach the shores of the United States. While defendant Yamaha Motor's foreseeability was based on its direct sale of snowmobiles to a California corporation for distribution throughout the United States and on upon the fact that two of its directors are also directors of the distributor corporation, no such factors are presented regarding Yokohama. Yokohama cannot be deemed to foresee substantial use of its product in Minnesota or to be enjoying the benefits of Minnesota law without some type of minimal showing.[11]

Minnesota does have an interest in providing a forum for a resident plaintiff in a products liability action. In this particular factual situation, the court is of the opinion that all necessary defendants are before the court to provide plaintiff full recovery, if he prevails. Confronted with the present record, the court is persuaded that the exercise of jurisdiction over Yokohama would offend federal due process of law.

Based upon the foregoing,

IT IS ORDERED That the motion of Yamaha Motor Company, Ltd., to dismiss the complaint for lack of personal and subject matter jurisdiction be and the same hereby is denied.

IT IS FURTHER ORDERED That the motion of Yokohama Rubber Company to dismiss the complaint for lack of personal jurisdiction be and the same hereby is granted.

11. A party's status as a component part manufacturer does not in all instances foreclose the exercise of jurisdiction. Such an exercise of jurisdiction does not offend due process if minimal contacts are established. *Sells v. International Harvester, supra; Duple Motor Bodies, Ltd. v. Hollingsworth, supra; Stark v. Mobile Aerial Towers, Inc., supra.*